J-S51044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| OZZIE DAVIS, | |
| Appellant | No. 2050 EDA 2014 |

Appeal from the PCRA Order May 5, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-1103861-1999

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 16, 2015**

Appellant, Ozzie Davis, appeals from the order dismissing his amended, counseled petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  He claims ineffective assistance of counsel chiefly for the purported failure to determine the availability of a Commonwealth witness, and for not challenging the use of a redacted statement of his co-defendant.  We affirm.

We derive the facts and procedural history of this appeal from the PCRA court opinion, this Court's decision on direct appeal, and our own independent review of the record.  (**See** PCRA Court Opinion, 12/19/14, at 1-3; **see also Commonwealth v. Davis**, No. 152 EDA 2005 (Pa. Super.

_____

[*] Retired Senior Judge assigned to the Superior Court.

filed July 10, 2007) (unpublished memorandum at 2-3), *appeal denied*, 945 A.2d 166 (Pa. 2008)).

Appellant's jury conviction of third degree murder and criminal conspiracy arose out of the fatal shooting of Melvin Lewis, in Philadelphia, on August 11, 1999. The shooting grew out of an argument that occurred about 6:45 P.M. that day between Aisha Lane, Appellant's girlfriend, and Latina Sasportas, who claimed Appellant was the father of her two month old son. Ms. Lane became angry at Mr. Lewis, Ms. Sasportas' then-current boyfriend, for remarks he made to her as a result of that argument, which she considered insulting.

Later that evening, at about 9:00 P.M., Appellant and Ms. Lane picked up Appellant's friend, Eric Cacho, a convicted murderer,[1] and the three drove to the home of Ms. Sasportas. While Appellant argued with Mr. Lewis, Cacho came up behind Lewis and shot him in the back, fatally.[2] Cacho and Appellant fled together. Appellant was the getaway driver. A bystander who witnessed these events later testified at trial.

_____

[1] (**See** Commonwealth's Brief, at 5 n.3).

[2] Haresh Mirchandani, M.D., Chief Medical Examiner of Philadelphia, testified that Mr. Lewis suffered a fatal, single close-range (contact) gunshot wound to the right flank, resulting in damage to major blood vessels, which caused death from bleeding or asphyxiation. (**See** N.T. Trial, 3/08/01, at 74). Counsel had stipulated to Dr. Mirchandani's expertise as a pathologist. (**See** *id.* at 69-70).

The police later arrested Appellant and Cacho. Cacho gave the police a statement implicating Lane and Appellant. He admitted shooting Lewis, but claimed he did it at Appellant's request, in return for a future favor. His redacted statement was read at trial.

Ms. Lane, a reluctant Commonwealth witness, testified and was cross-examined at a preliminary hearing, but did not appear for trial, and the prosecutor reported to the trial judge that the Commonwealth could not locate her. Appellant's trial counsel stipulated to Ms. Lane's unavailability. At trial an attorney read from Ms. Lane's testimony at the preliminary hearing.

The jury found Appellant guilty of murder of the third degree and criminal conspiracy. On June 26, 2002 the court sentenced him to an aggregate term of not less than twenty nor more than forty years' incarceration. He did not file a post-sentence motion. This Court dismissed his first direct appeal for failure to file a brief, but his appellate rights were later reinstated *nunc pro tunc*. On direct appeal, this Court affirmed judgment of sentence and our Supreme Court denied allowance of appeal. (**See Davis**, **supra**.).

On September 29, 2008, Appellant timely filed a *pro se* PCRA petition.[3]

Court appointed counsel first filed a **Turner/Finley**[4] "no merit" letter, but

subsequently filed numerous amended petitions. On March 28, 2013, the

PCRA court filed a Rule 907 notice of intent to dismiss. Appellant filed

objections. The Commonwealth filed a response to Appellant's objections.

Counsel filed an amended petition for Appellant, and the Commonwealth

filed a motion to dismiss. On February 12, 2014, the PCRA court again filed

---

[3] The PCRA court characterizes this petition as Appellant's "first substantive *pro se* petition[.]" (PCRA Ct. Op., at 2). However, as recognized in the same opinion, the PCRA judge's predecessor, the Honorable Renée Cardwell Hughes, held an evidentiary hearing on December 7, 2004, (despite the pendency of a direct appeal) for the express purpose of making a record on Appellant's counseled ineffectiveness claims for appeal. (**See id.** at 2 n.1; **see also** N.T. Hearing, 12/07/04, at 1-52). On or about December 9, 2004, Judge Hughes filed an order which, in pertinent part, denied Appellant's ineffectiveness claims and noted the reinstatement of his right of direct appeal. Appellant timely appealed. (**See** Notice of Appeal, 1/10/05). Nevertheless, on independent review, we find no record of the disposition of this collateral appeal. We do find a succession of appointments of counsel. In any event, the current PCRA judge, the Honorable Steven R. Geroff, notes that the instant dismissal of Appellant's PCRA petition "includes [Appellant's] original PCRA petition and all [a]mended [p]etitions." (PCRA Ct. Op., 12/19/14, at 3, n.2). Although the prior disposition of PCRA claims could raise issues of previous litigation and waiver, in view of the inconsistent state of the record, we accept the PCRA court's assessment of the scope of the dismissal (which itself is not included in the record, but which is referred to, and not in dispute), give Appellant the benefit of the doubt, and treat all issues raised in this appeal as timely, not waived because of failure to include them in any prior PCRA petition, and not previously litigated.

[4] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Appellant filed a *pro se* reply opposing the no-merit letter. (**See** Petitioner's Reply in Opposition to PCRA Attorney's No-Merit Letter, 2/25/11, at 1-40).

notice of intent to dismiss, and on May 5, 2014, dismissed the petition.

Appellant timely appealed, on May 22, 2014.[5]

Appellant presents three questions for our review:

A. [Was t]rial counsel . . . ineffective for failing to investigate and determine that the Commonwealth's witness Aisha Lane was available to testify at trial and [Appellant] suffered prejudice because he could not confront this witness in violation of his Sixth Amendment right to confront and cross-examine witnesses at trial[?]

B. [Was t]rial counsel . . . ineffective for failing to challenge the prosecutor's statement to the trial court concerning the availability of Aisha Lane as a Commonwealth witness and the Appellant suffered prejudice pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963)[?]

C. [Was a]pellate counsel . . . ineffective for failing to preserve and argue the **Bruton** claim on direct appeal because the Appellant's conviction was based on the redacted statement of co-defendant Cacho and the redacted preliminary hearing testimony of Aisha Lane in violation of **Bruton v. U.S.**, 391 U.S. 123 (1968)[?]

(Appellant's Brief, at 3).

Our standard and scope of review are well-settled:

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

_____

[5] The PCRA court did not order a statement of errors. **See** Pa.R.A.P. 1925(b). The court filed its opinion on December 19, 2014. **See** Pa.R.A.P. 1925(a).

[A] PCRA petitioner will be granted relief [for ineffective assistance] only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. . . . [T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014) (case citations, quotation marks, and other punctuation omitted).

Here, in his first claim, Appellant asserts trial counsel ineffectiveness for failure to investigate and determine whether Commonwealth's witness Aisha Lane was available to testify at trial. (*See* Appellant's Brief, at 3). He faults trial counsel for stipulating to Ms. Lane's unavailability for trial, as reported by the Commonwealth. (*See id.* at 27-34). He maintains he was prejudiced because he could not confront this witness and cross-examine

her, in violation of his Sixth Amendment constitutional right. (***See id.*** at 32-33). This issue is waived.

Preliminarily, we observe that Appellant has failed to provide any evidence of record to support, let alone prove, the mere bald assertions that he claims would entitle him to relief.

Most notably, in the statement of the case, Appellant cites to the transcript of the preliminary hearing for Ms. Lane's testimony, Ms. Sasportas' testimony, *etc*. (***See*** Appellant's Brief, at 4-7). At trial, an attorney read portions of Ms. Lane's testimony (and Cacho's statement) from the preliminary hearing into the trial transcript for the jury. Appellant maintains that the prosecutor made material deletions from the preliminary hearing testimony to the selections read at trial, so that the testimony read was not an accurate reflection of the preliminary hearing, to his prejudice. (***See id.*** at 12, 13).

However, he has failed to ensure that the transcript of the preliminary hearing is included in the certified record for our review. Therefore, comparison to enable meaningful review of his claim is impossible.[6]

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified

---

[6] The statements at issue were entered into evidence as Commonwealth exhibits, but the exhibits were not included in the certified record either.

record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

*Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted).

Similarly, Appellant provides no reference in the record for his claim that he timely informed his trial counsel of the whereabouts of Ms. Lane. (*See* Appellant's Brief, at 23, 24, 30). It is not the role of this Court to develop an argument for a litigant, or to scour the record to find evidence to support an argument. *See J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d 402, 411 (Pa. Super. 2012). Appellant's first claim is waived.

Moreover, it would not merit relief.

Where a[n appellant] claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case. With respect to such claims, our Court has explained that:

the [appellant] must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

*Commonwealth v. Michaud*, 70 A.3d 862, 867-68 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Here, on the record before us, even assuming for the sake of argument that appellate counsel's court-appointed investigator did find Ms. Lane as claimed, **in 2012**, (*see* Appellant's Brief, at 16), that discovery does not satisfy any of the elements required to prove that Ms. Lane was available, and willing to testify, for Appellant (even though she was a **Commonwealth** witness) **at trial in 2001**. *See Michaud*, *supra* at 867-68. Even more importantly, Appellant fails to provide "an adequate assertion that the substance of the purported testimony would make a difference in the case." *Id.* at 867 (citation omitted). Appellant fails to prove prejudice. Therefore, even if it were not waived, Appellant's first claim would not merit relief.

In his second claim, Appellant claims trial counsel was ineffective for failing to challenge the Commonwealth's statement to the trial court that Ms. Lane was unavailable, as prejudicial under *Brady v. Maryland*, 373 U.S. 83 (1963). (*See* Appellant's Brief, at 24-25). We disagree.

*Brady* held in pertinent part that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *See Brady*, *supra* at 87.

Under ***Brady*** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. ***See, e.g., Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 310 (2011). To establish a ***Brady*** violation, an appellant must prove three elements:

> (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

***Hutchinson***, ***supra*** (citation omitted).

The burden rests with the appellant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." ***Id.*** (citation omitted). The evidence at issue must have been "material evidence that deprived the defendant of a fair trial." ***Id.*** (citation and emphasis omitted). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 450 (2011) (quoting ***Kyles v. Whitley***, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

***Brady*** does not require the disclosure of information "that is not exculpatory but might merely form the groundwork for possible arguments or defenses," nor does ***Brady*** require the prosecution to disclose "every fruitless lead" considered during a criminal investigation. ***Id.*** (citation omitted). The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. ***Commonwealth v. Puksar***, 597 Pa. 240, 951 A.2d 267, 283 (2008); ***Commonwealth v. Lesko***, 609 Pa. 128, 15 A.3d 345, 370 (2011) (applying ***Kyles***, ***supra*** at 438, 115 S.Ct. 1555). ***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other

sources. ***Commonwealth v. Smith***, 609 Pa. 605, 17 A.3d 873, 902–03 (2011); ***Paddy***, ***supra*** at 451.

> ***Brady*** sets forth a limited duty, not a general rule of discovery for criminal cases. ***Paddy***, ***supra*** at 451 (citing ***Weatherford v. Bursey***, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L.Ed.2d 30 (1977) for the proposition that "there is no generalized constitutional right to discovery in a criminal case, and ***Brady*** did not create one").

***Commonwealth v. Roney***, 79 A.3d 595, 607-08 (Pa. 2013) *cert. denied sub nom.* ***Roney v. Pennsylvania***, 135 S. Ct. 56 (2014) (emphasis omitted).

Here, first and foremost, on our review and as noted by the PCRA court, "[t]here is no indication **whatsoever** that the Commonwealth suppressed any evidence." (PCRA Ct. Op., at 12) (emphasis added). The PCRA court concluded, "Accordingly, this claim fails." (***Id.***). We agree.

Moreover, the claim would not merit relief on any other basis. The prosecutor's challenged remark was, "They [the jury] know Aisha was killed." If the investigator did in fact locate Ms. Lane eleven years later, then, in hindsight, the assertion was objectively incorrect. However, it is important to note that the statement occurred in an informal sidebar discussion, during deliberations, about a jury inquiry. The observation was one of several speculations made back and forth by counsel and the trial judge on the motive for the jury's question. (***See*** N.T. Trial, 3/13/01, at 8). It bears noting that the jury never heard the statement. Appellant fails to

explain how he could have been prejudiced by a remark that the factfinders did not hear. The assertion fails to prove ineffectivenss.

On a related claim, Appellant argues that "[i]t was in the prosecutor's interest not to have Ms. Lane appear as live witness (sic) and testify at trial." (Appellant's Brief, at 25). He maintains, accurately, that Ms. Lane's "preliminary hearing testimony included claims of police coercion and cast doubt on the credibility of her previous statements to the police." (*Id.*).

However, the jury **did** hear the claim of coercion and the history of inconsistent statements Ms. Lane made to the police. The transcript read to the jurors at trial **includes** direct examination by the prosecutor which unswervingly addresses police threats to charge Ms. Lane with conspiracy to commit murder. (*See* N.T. Trial, 3/07/01, at 208-09).

Similarly, and still on direct examination, Ms. Lane agreed with the prosecutor that the police "started to put some pressure on [her] to say that [Appellant] set the whole thing up." (*Id.* at 210). Near the end, the prosecutor asked, "And at that point in time you were going to tell them [the police] what you thought they wanted to hear because you didn't want to get arrested. Is that correct?" Ms. Lane answered, "Yes." (*Id.* at 216).

This candid exchange as read to the jury belies Appellant's claim that the Commonwealth withheld statements from the preliminary hearing that would have cast doubt on Ms. Lane's credibility. Appellant fails to show a

*Brady* violation. He fails to prove ineffectiveness. Appellant's second claim does not merit relief.

Finally, in his third claim, Appellant asserts that direct appeal counsel was ineffective for failing to preserve and argue a claim that his conviction was impermissibly based on the redacted statement of his co-defendant, and the redacted preliminary hearing testimony of Aisha Lane, in violation of ***Bruton v. United States***, 391 U.S. 123 (1968).[7] (***See*** Appellant's Brief, at 3). He argues that the redactions were inadequate. (***See id.*** at 26; 40-58). We disagree.

Preliminarily, we reject all the claims pertaining to Ms. Lane's testimony, for the reasons already noted. Similarly, Appellant has waived any argument based on a purported irregularity in the redaction by failing to ensure that the certified record included the unredacted statement, and referencing that evidence in his brief.

Next, we note that the PCRA court reasons that this claim was previously litigated, citing this Court's decision on direct appeal. (***See*** PCRA Ct. Op., at 13; ***see also Davis***, ***supra*** at *9-*12) (concluding Cacho's

---

[7] In pertinent part, ***Bruton*** held that the admission of a facially incriminating statement by the non-testifying co-defendant violated the appellant's right of cross-examination guaranteed by the confrontation clause of the Sixth Amendment, notwithstanding a cautionary instruction to the jury. ***See Bruton***, ***supra*** at 135-36; ***see also Commonwealth v. Travers***, 768 A.2d 845, 847 (Pa. 2001).

redacted statement admissible under principles announced in ***Travers***, ***supra*** at 851).

We recognize, as noted by Appellant, that ineffectiveness claims are distinct issues from the underlying claims raised on direct appeal. (***See*** Appellant's Brief, at 57); ***see also Commonwealth v. Collins***, 888 A.2d 564, (Pa. 2005). However, as the ***Collins*** Court recognized, such claims must be reviewed under the three pronged ***Pierce*** test. ***See Collins***, ***supra*** at 573 ("Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal[.]"); (***see also*** Commonwealth's Brief, at 15 n.6).

Therefore, here, Appellant's third claim fails because, among other reasons, this Court has already decided that the underlying claim has no arguable merit. (***See Davis***, ***supra*** at *11).

Moreover, Appellant's claim that his conviction was based on Cacho's statement not only disregards that the statement was properly redacted, but also disregards the trial court's cautionary instruction: "**You must not . . . consider the [Cacho] statement as evidence against Ozzie Davis. You must not use the statement of Eric Cacho in any way against Ozzie Davis.**" (N.T. Trial, 3/12/01, at 27) (emphasis added).

Appellant concedes that at a joint trial a witness' testimony is not considered against a defendant if an instruction is given to the jury to consider the evidence only against the [confessing] co-defendant. (***See***

- 14 -

Appellant's Brief, at 45). He also concedes that the general presumption is that juries will abide by such a limiting instruction. (*See id.*). He even concedes that in ***Richardson v. Marsh***, 481 U.S. 200 (1987), the United States Supreme Court limited ***Bruton***.[8] (*See* Appellant's Brief, at 45).

Nevertheless, Appellant argues, at great length, that ***Bruton*** still applies and controls. (*See id.* at 45-58). We note here our agreement with the Commonwealth that Appellant's "sixty-page brief is anything but straightforward, and has little to do with either trial or appellate counsel's performance." (Commonwealth's Brief, at 9). Unfortunately for Appellant, sheer length, without more, does not improve the cogency of an argument.[9] Appellant is unpersuasive. He has failed to prove ineffectiveness. Appellant's third claim has no merit. Accordingly, none of Appellant's claims merit relief.[10]

---

[8] ***See Richardson***, ***supra*** at 211 (holding that Confrontation Clause is not violated by admission of non-testifying codefendant's confession with proper limiting instruction when confession is redacted to eliminate not only defendant's name, but "any reference to his or her existence[,]" declining to extend ***Bruton***).

[9] In fact, it can be counter-productive. In his argument, Appellant describes a narrative of his driving to the crime scene and giving **himself** instructions to shoot Mr. Lewis. (*See* Appellant's Brief, at 50). Appellant is attempting to paraphrase the prosecutor. (*See id.* (citing N.T. Trial 3/05/01, at 52; 3/09/01, at 114, 116)). However, none of the statements in the pages cited make the same mistake as Appellant, or anything remotely similar.

[10] Appellant offers a final catch-all claim that alleges cumulative prejudice, citing ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009)
*(Footnote Continued Next Page)*

J-S51044-15

    Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/16/2015</u>

*(Footnote Continued)* ———————————

(recognizing that if multiple instances of deficient performance are found, assessment of prejudice properly may be premised on "cumulation"). (***See*** Appellant's Brief, at 58-59). Because Appellant failed to include this claim in his statement of questions involved, it is waived. ***See*** Pa.R.A.P. 2116. Moreover, it would not merit relief. None of Appellant's underlying claims have merit. "[N]o number of failed claims may collectively attain merit if they could not do so individually." ***Commonwealth v. Rolan***, 964 A.2d 398, 411 (Pa. Super. 2008) (citations and emphasis omitted).