J-S26020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC DESHANN D. FLOYD | : | |
| | : | |
| Appellant | : | No. 31 EDA 2017 |

Appeal from the PCRA Order December 9, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005974-2008,
CP-51-CR-0005976-2008, CP-51-CR-0005981-2008

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 11, 2018**

Eric Deshann Floyd appeals from the denial of his PCRA petition.  We affirm.

We previously set forth the facts underlying Appellant's convictions in our memorandum affirming his judgment of sentence, which we adopt herein.

> In the spring of 2008, co-conspirator Howard Cain developed a plan to rob a Bank of America branch located inside a Philadelphia supermarket.  Mr. Cain recruited Appellant and others to carry out the plan, which began with a series of separate robberies to obtain weapons and a getaway vehicle.
>
> On March 31, 2008, Appellant, Mr. Cain, and two others committed a home invasion robbery at the residence of Anthony Brown.  During the robbery, the bandits tied up Mr. Brown and his family.  The bandits also wore "Muslim apparel," including a burqa that fully covered one of the unidentified robbers' faces.  Appellant and Mr. Cain did not cover their faces, and Mr. Brown later identified them.   Significantly, the proceeds of the robbery included an SKS assault rifle.

_____
*   Former Justice specially assigned to the Superior Court.

On May 2, 2008, Appellant, Mr. Cain, and Mr. Cain's uncle committed the gunpoint carjacking of Aaron Savage. At the time, Mr. Savage was operating an unlicensed taxicab in North Philadelphia. Mr. Cain's uncle approached Mr. Savage and requested a ride for himself and "two Muslim sisters." In reality, the sisters were Appellant and Mr. Cain, who had disguised themselves in burqas. Mr. Savage accepted the passengers and began to drive them to their stated destination. After traveling for less than a block, Mr. Cain brandished a handgun, demanded that Mr. Savage pull over near some abandoned houses, and ordered Mr. Savage out of the vehicle. Fearing for his life, Mr. Savage fled on foot. Appellant, Mr. Cain, and Mr. Cain's uncle drove off in Mr. Savage's vehicle, a blue Jeep Liberty.

On the morning of May 3, 2008, Appellant and Mr. Cain met with codefendant Levon Warner to consummate the planned bank robbery. Prior to departing for the bank, Appellant and Mr. Cain again disguised themselves in burqas. Mr. Warner wore a wig, glasses, and a dust mask to obscure his face. Appellant drove the men to the supermarket in the stolen Jeep. Upon arriving at the supermarket parking lot, Appellant parked the vehicle, picked out a shopping cart, and placed a box inside the cart. The box contained the stolen assault rifle. When the co-conspirators entered the supermarket, Appellant stood with the shopping cart near the door to the bank.

With Appellant serving as a lookout, Mr. Cain and Mr. Warner entered the bank, stood in the back, and watched a bank manager unlock the gate to the teller area. With the gate unlocked, Mr. Cain rushed toward the manager, grabbed her, dragged her into the teller area, brandished a handgun, and demanded that the tellers place money into a bag he was carrying. Armed with a handgun, Mr. Warner paced in front of the teller windows as the tellers complied with Mr. Cain's demands. The tellers placed approximately $50,000.00 into Mr. Cain's bag, along with a GPS tracking device. The tracking device activated at 11:27 a.m., when the thieves exited the bank.

After the robbery, Appellant, Mr. Cain, and Mr. Warner returned to the Jeep. Appellant served as the getaway driver. Within minutes, calls went out over police radio relaying information about the robbery and the suspects. Philadelphia Police Sergeant Stephen Liczbinski received the call, spotted the getaway car, and commenced a pursuit. During the chase, someone in the Jeep

said, "Bang him."  At that point, Mr. Cain asked Mr. Warner for the assault rifle, which Mr. Warner handed to him.  Appellant stopped the Jeep, and Mr. Cain exited with the assault rifle.  Sergeant Liczbinski stopped his vehicle behind the Jeep, exited, and approached the Jeep.  Before Sergeant Liczbinski could draw his service weapon, Mr. Cain opened fire with the assault rifle and killed the sergeant.

After the shooting, Mr. Cain reentered the Jeep; and Appellant drove to a second getaway vehicle, a minivan, parked nearby.  Mr. Warner drove the minivan a short distance before Mr. Cain ordered him to pull over.  Mr. Warner pulled over, and the suspects exited and split up.  Later that day, Mr. Cain died during a shootout with police.  Police subsequently arrested Mr. Warner, and he provided a statement detailing his participation in the robbery.  Police did not arrest Appellant until May 7, 2008, when a tipster led them to the abandoned house where Appellant was hiding.  On May 8, 2008, Appellant provided an inculpatory statement regarding his own participation in the bank robbery.

*Commonwealth v. Floyd*, 2013 WL 11299434 at *1-2 (Pa.Super. 2013).

Appellant was charged at three separate dockets with various crimes, including robbery, robbery of a vehicle, conspiracy to commit homicide, homicide, and related offenses.  Appellant was convicted of, *inter alia*, first-degree murder.  We affirmed, *id*., and Appellant filed a petition for allowance of appeal, which was denied on July 25, 2013.  *Commonwealth v. Floyd*, 70 A.3d 809 (Pa. 2013).

Appellant thereafter filed a timely *pro se* PCRA petition on May 9, 2014.  Counsel was appointed, who filed an amended PCRA petition on April 7, 2016, followed by a supplemental petition on April 20, 2016.  Each petition raised one claim:

[Appellant]'s appellant [*sic*] defense counsel was ineffective on on [*sic*] allocatur was ineffective [*sic*] because he failed to raise all

- 3 -

the issues addresse[d] by the Superior Court on appeal. Five issues were addressed by the Superior Court and counsel only raised two of these issues on allocatur to the State Supreme [Court]. As a result of this fai[l]ure by counsel the defendant was denied his right to effective assistance of counsel on allocatur to the State Supreme Court. This issue has not been waived because it is the first time that [Appellant] can raise it.

Amended PCRA Petition, 4/7/16, at 2.

[Appellant] was denied his rights under the 6th Amendment of the U.S. Constitution and Art. I sec. 9 of the State Constitution when the Commonwealth introduced the redacted confession of the co-defendant, Levan Warner[,] who did not testify at trial because he asserted his right to remain silent. Form [*sic*] this redacted confession the jury was able to reasonably infer that it was the defendant who said "Bang Him" before the victim was shot and killed and therefore the jury could reasonably infer that the defendant had specific intent to kill. To the extent that trial defense counsel did not object to this prejudicial unconstitutional evidence, counsel was ineffective and the defendant is entitled to a new trial. This issue has not been waived because it is the first time that [Appellant] can raise it.

Supplemental Amended PCRA Petition, 4/20/16, at 2.

On November 4, 2016, the PCRA court issued a notice of intent to dismiss. Appellant did not respond, and the PCRA court thereafter dismissed the petition. Appellant filed a timely notice of appeal, and the PCRA court prepared a Pa.R.A.P. 1925(a) opinion responding to the two claims in lieu of requiring a concise statement. Appellant presents the following three issues.

I. Was trial defense counsel ineffective in failing to object to the redacted statement of the co-defendant that was introduced at trial which inferred that the appellant told a third co-conspirator to kill the victim because this evidence violated appellant's State and Federal Constitutional right to confront evidence against him?

II. Is the appellant is [*sic*] entitled to a reinstatement of his right to file allocat[u]r to the State Supreme Court *nunc pro tunc* from

- 4 -

the judgment of the Superior Court affirming the judgment of sentence in the trial court because appellant [*sic*] counsel was ineffective in presenting only two of the five issues that were presented in the Superior Court to the State Supreme Court on allocat[u]r?

III. Was trial defense counsel ineffective in not objecting to the trial court's instruction of proof beyond a reasonable doubt because the charge allowed the jury to convict appellant on a burden of proof less that beyond a reasonable doubt thereby den[y]ing appellant of Due Process?

Appellant's brief at 2.

Appellant's first issue concerns the introduction of co-defendant Warner's statement at their joint trial. The content of this statement was set forth in our direct appeal memorandum.

After we had all the money we exited the bank. Then we got into the Jeep and fled to the next car that we parked a few blocks away. On the way to the next car a Police car was coming down the same street that we were on. The Police car started to slow down as he drove past us and then it looked like he was making a U-turn so the boy drove away real fast. That's when the Officer started following us with his lights and sirens on. That lasted for a few blocks and then the young boy almost flipped the Jeep over and the officer had caught up to us and was right on the side of our Jeep. The boy that was driving the car started yelling, "Bang him." Then [Mr. Cain] told me, "Give me the gun." I handed [Mr. Cain] the rifle I was holding and the boy slowed down and stopped the car. That's when [Mr. Cain] got out and started shooting at the cop. After the shooting stopped [Mr. Cain] got back in the car and the boy pulled off.

*Floyd*, 2013 WL 11299434 at *7 (alterations in original, footnote omitted).

The statements referencing the driver did not facially refer to Appellant; however, Appellant's own statement, which was introduced at trial, inculpated him as the driver. *Id*. at *6 ("In his statement, Appellant admitted driving

the Jeep to the bank . . . and driving the Jeep away from the premises after the bank robbery."). Thus, Warner's statement inferentially established Appellant as the man who said, "Bang him."

That linkage prompted trial counsel to file a motion to sever Appellant's trial. "Prior to trial, Appellant insisted that the court should sever his case from Mr. Warner's, because 'the jury [would] conclude that the words and actions attributed to 'the boy' in Mr. Warner's statement will be attributed to [Appellant].'" *Id*. at *7 (citation omitted). The trial court denied the motion, but redacted Warner's statement as follows.

> After we had all the money, we exited the bank. Then we got into the jeep and fled to the next car that we parked a few blocks away.
>
> On the way to the next car, a police car was coming down the same street that we were on. The police car started to slow down as he drove past us, then it looked like he was making a U-turn. So the other guy drove away real fast. That's when the officer started following us with the lights on and sirens on. That lasted for a few blocks and then the other guy almost flipped the jeep over and the officer had caught up to us and was right on the side of our jeep. **Someone started yelling bang him, then [Mr. Cain] told me give me the gun.** I handed [Mr. Cain] the rifle I was holding and the other guy slowed down and stopped the car. That's when [Mr. Cain] got out and started shooting at the cop.

*Id*. (emphasis in original).

Trial counsel did not object to the introduction of this statement at trial. On direct appeal, Appellant argued that the trial court erroneously denied his severance motion. Appellant's argument invoked *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, *Richardson v. Marsh*, 481 U.S. 200

(1987), and **Gray v. Maryland**, 523 U.S. 185 (1998), which generically

concern the introduction of a co-defendant's statement against another

defendant.  We quote our analysis of that claim.

> "Under the Confrontation Clause of the Sixth Amendment, a
> criminal defendant has a right to confront witnesses against him."
> **Commonwealth v. Rivera**, 565 Pa. 289, 299, 773 A.2d 131, 137
> (2001), *cert. denied,* 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d
> 355 (2002).  A defendant is deprived of his Sixth Amendment
> rights when his non-testifying co-defendant's facially incriminating
> confession is introduced at their joint trial, even if the jury is
> instructed that the confession can be considered only against the
> confessing co-defendant.  **Id**.  Nevertheless, "[i]f a confession can
> be edited so that it retains its narrative integrity and yet in no way
> refers to [the non-confessing] defendant, then use of it does not
> violate the principles of **Bruton**."  **Commonwealth v. Travers**,
> 564 Pa. 362, 368, 768 A.2d 845, 848 (2001) (quoting
> **Commonwealth v. Johnson**, 474 Pa. 410, 412, 378 A.2d 859,
> 860 (1977)).
>
> In **Travers**, our Supreme Court held that the redaction of a non-
> testifying co-defendant's confession in a joint trial, which replaced
> any direct reference to the non-confessing co-defendant with a
> neutral pronoun, when accompanied by an appropriate cautionary
> charge, sufficiently protected the non-confessing defendant's
> Sixth Amendment rights.  **Travers**, **supra** at 372–73, 768 A.2d
> at 851.  The **Travers** Court observed Pennsylvania law is now
> clear that redacted statements trigger confrontation clause
> concerns under **Bruton** only if the redacted statement **on its face**
> ties the defendant to the crime, but not if the incrimination arises
> from linkage to other evidence in the case.  **Id.** at 372 n. 2, 768
> A.2d at 850 n. 2 (citing **Gray v. Maryland**, 523 U.S. 185, 118
> S.Ct. 1151, 140 L.Ed.2d 294 (1998)).

**Floyd**, 2013 WL 11299434 at *6 (emphasis in original, footnote omitted).

Thus, we held that the redacted statement did not violate **Bruton** as

interpreted by our Supreme Court in **Travers**.  Appellant maintains that trial

- 7 -

counsel was ineffective for failing to object to the introduction of this statement, despite our ruling on the motion to sever.

The PCRA court and the Commonwealth assert that the issue is unreviewable as it has been previously litigated. The PCRA statute states that a petitioner is eligible for relief only if, *inter alia*, "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). In turn, an issue is deemed "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544(a)(2). In **Commonwealth v. Collins**, 888 A.2d 564 (Pa. 2005), our Supreme Court examined the meaning of the word "issue," and concluded that "a Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under § 9544(a)(2)." **Id**. at 573.

The instant facts are largely identical to the situation examined in **Commonwealth v. Gribble**, 863 A.2d 455 (Pa. 2004). Gribble and his co-defendant, his girlfriend Kelly O'Donnell, killed and dismembered Eleftherios Eleftheriou. Each defendant confessed and took sole responsibility for the crimes. According to Gribble, he saw Mr. Eleftheriou groping O'Donnell, which enraged Gribble and prompted him to beat the victim to death with a hammer. O'Donnell, on the other hand, said that she killed the victim with the hammer because he was "slimy" and had previously rubbed his penis on her. **Id**. at

458 n.1. Trial counsel filed a motion to sever, but withdrew it. Gribble and O'Donnell were jointly tried non-jury, and both statements were introduced.

Gribble received the death penalty, and on direct review to our Supreme Court he argued that the admission of his co-defendant's confession violated his Sixth Amendment right to confront witnesses against him pursuant to **Bruton**. The Court concluded that the statement did not violate **Bruton**, because the co-defendant's statement did not inculpate Gribble, but actually exonerated him.

During collateral proceedings, Gribble alleged that trial counsel ineffectively withdrew the motion to sever, on the grounds that O'Donnell's statement was antagonistic to his "heat of passion" defense. **Id**. at 461. The **Gribble** Court concluded that the claim had been previously litigated.

> The allegation of error underlying appellant's current ineffectiveness claim is very similar to the **Bruton** claim he litigated on direct appeal. Where appellant there complained of a confrontation clause issue arising from the admission of O'Donnell's confession at the joint trial, he now alleges that counsel should have preempted the problem entirely by seeking severance. Severance (along with redaction of the confession, exclusion of the confession, limiting charges, etc.) is one of several theoretical ways in which the underlying confrontation/ **Bruton** style issue may be addressed or remedied. Though the specific remedial precaution differs, the trial issue sought to be avoided is the same: *i.e.,* the potential for spillover prejudice arising from admission of a non-testifying co-defendant's confession in a joint trial. Thus, appellant's litigation of the confrontation claim on direct appeal necessarily involved an issue that is also at the heart of appellant's current underlying severance argument-*i.e.,* that the admission of O'Donnell's confession against her inculpated and thereby prejudiced appellant. . . . Since our finding on direct appeal was based upon an assessment of the effect of O'Donnell's statement, and the

- 9 -

present claim of counsel ineffectiveness could only succeed if we reached a contrary determination that the statement was, in fact, prejudicial to appellant, the PCRA court did not err in finding this claim to be previously litigated.

*Id*. at 461–62.

The same logic applies herein. The present claim of ineffectiveness can succeed only if we hold that the introduction of the statement did, in fact, violate **Bruton**, since the **Bruton** violation supplied the necessary basis to object. Finding that the statement violates **Bruton** is precisely what our prior memorandum precludes. Applying **Gribble**, this claim has been previously litigated.

However, post-**Gribble** law as cited *supra* requires viewing this claim distinctly, since the underlying Sixth Amendment ineffectiveness claim has its own standards and governing law.[1] Additionally, **Gribble** applied an alternative analysis: "In any event, even if it is assumed that the instant claim, which sounds in counsel ineffectiveness rather than in evidentiary/confrontation clause restrictions, is sufficiently distinct to escape

_____

[1] Notwithstanding **Commonwealth v. Collins**, 888 A.2d 564 (Pa. 2005), the present claim may in fact be previously litigated. This is not a situation where Appellant's current claim implicates a broader set of considerations or legal argument. **Commonwealth v. Gribble**, 863 A.2d 455, 477 (Pa. 2004) ("Although one aspect of the disposition of Appellant's present claim certainly involves consideration of the Court's holding on direct appeal, the majority's alternative merits analysis demonstrates that the claim implicates a broader inquiry into the character of the defenses at issue.") (Saylor, J., concurring). The inquiry herein is not broader; it is exactly the same.

the effect of the statutory previous litigation bar, the claim fails on the merits."

*Id*. at 462. Therefore, we will treat the claim as a distinct claim of ineffectiveness.

Appellant recognizes the distinct nature of the ineffectiveness claim, but fails to explain how he is entitled to relief in light of our direct appeal holding. Per *Collins*, the complaint that counsel should have objected to the admission of Warner's statement during the trial is indeed distinct from the claim addressed on direct appeal, which considered only the propriety of trying Warner and Appellant together. However, it is obvious that the core claim is exactly the same in both situations, *i.e.*, that *Bruton* does not permit the introduction of Warner's statement against Appellant. Issues involving *Bruton* can arise in a variety of contexts, including severance, *Gray*, *supra* at 188 ("The trial judge, after denying Gray's motion for a separate trial . . ."), and as evidentiary objections, *Marsh*, *supra* at 203 ("[T]he State introduced (over respondent's objection) a confession given by Williams to the police shortly after his arrest."). Regardless of the particular context, it is plain that the underlying issue involves *Bruton*. As *Collins* explained, the resolution of that legal issue dooms the current ineffectiveness claim:

> Appellant now forwards his claim of ineffectiveness by relying on the Due Process Clause of the United States Constitution. **By Appellant's own admission, however, the factors to consider in assessing a due process claim when offenses have been joined is similar to the test we employed on direct appeal**. *See id*. In fact, according to Appellant, in applying the federal, due process test, the court must consider the same three factors that we considered on direct appeal in addition to

- 11 -

whether the trial court gave an adequate limiting instruction. Appellant's Brief at 55. As we made clear in our discussion of "previously litigated" claims, although we will analyze a distinct claim of ineffectiveness that is based on the underlying issue that was litigated on direct appeal, in many cases, those claims will fail for the same reasons as they failed on direct appeal.

*Collins*, *supra* at 574–75 (emphasis added).

Herein, the test for whether any objection to the introduction of the statement would succeed is precisely the same as whether severance was required: Does *Burton* permit the introduction of Warner's statement? Our prior memorandum holds that the answer is no. The PCRA court properly denied relief based on this claim.

Appellant's second issue claims that appellate counsel ineffectively failed to include, within his petition for allowance of appeal to the Supreme Court of Pennsylvania, all five issues decided on direct appeal to this Court. The PCRA court properly denied this claim, as Appellant failed to establish appellate counsel's ineffectiveness.

In *Commonwealth v. Rigg*, 84 A.3d 1080 (Pa.Super. 2014), we summarized the law pertaining to ineffective assistance of counsel claims concerning petitions of allowance of appeals as follows:

On appeal, the Pennsylvania Supreme Court held that where appellate counsel informs his client that he will file a petition for allowance of appeal, but fails to do so in timely fashion, a cognizable claim of appellate counsel's ineffectiveness exists. The Court further held that, in such an instance, a petitioner is not required to prove that the Pennsylvania Supreme Court would have granted the petition. Subsequent decisions by the Pennsylvania Supreme Court have confirmed that counsel is *per se* ineffective for failing to file a requested petition for allowance

of appeal. ***Commonwealth v. Reed***, 601 Pa. 257, 971 A.2d 1216, 1225 (2009); ***Commonwealth v. Reaves***, 592 Pa. 134, 923 A.2d 1119, 1129 (2007).

***Id***. at 1087.

Appellate counsel filed a petition for allowance of appeal, which our Supreme Court denied. Thus, this is not a case where counsel can be deemed *per se* ineffective, as counsel sought review with our Supreme Court.

Appellant asks us to adopt a heretofore unknown principle that appellate counsel must seek review of **all** possible issues. Appellant's brief at 9 ("There was no reasonable basis for trial defense counsel [*sic*] to waive three of the 5 appellate issues that were raised in the Superior Court by not raising them in the allocat[u]r petition to the State Supreme Court."). Contrary to Appellant's argument, the hallmark of effective appellate advocacy is selecting those issues which pose the greatest chance of success.

> While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success. We concur with the view of an eminent appellate jurist, Judge Ruggero Aldisert, that the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid.

***Commonwealth v. Ellis***, 626 A.2d 1137, 1140 (Pa. 1993).

Herein, Appellant has failed to even discuss the issues counsel pursued to the exclusion of others, and his theory that counsel is obligated to present every single issue to our Supreme Court finds no support in the law. Counsel sought review of two issues, and therefore presumptive prejudice does not

- 13 -

apply. *See **Commonwealth v. Halley***, 870 A.2d 795, 801 (Pa. 2005) ("The difference in degree between failures that completely foreclose appellate review, and those which may result in narrowing its ambit, justifies application of the presumption in the more extreme instance."). No relief is due.

Appellant's final issue is that trial counsel was ineffective for failing to object to a flawed reasonable doubt instruction. This claim was not raised in the PCRA petition, and was presented for the first time on appeal. ***Commonwealth v. Santiago***, 855 A.2d 682, 691 (Pa. 2004) (claims not raised in a PCRA petition cannot be raised for first time on appeal). We therefore decline to consider it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/18