768 A.2d 845

COMMONWEALTH of Pennsylvania, Appellee,

v.

Otto TRAVERS, Appellant.

Supreme Court of Pennsylvania.

Argued Feb. 1, 2000.

Decided March 26, 2001.

Moira Dunworth, Philadelphia, for Otto Travers.

Catherine Marshall, William G. Young, Philadelphia, for Com.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR,, JJ.

## OPINION

CASTILLE, Justice.

This Court granted allowance of appeal in this matter to consider whether the redaction of a non-testifying co-defendant's confession in a joint trial, which replaced any direct reference to the defendant with the words "the other man," when accompanied by an appropriate cautionary charge, was sufficient to protect the defendant's Sixth Amendment confrontation clause rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and the United States Supreme Court's more recent decision in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).[1] For the reasons that follow, we hold that it was.

On December 13, 1994, the victim, Charles Byrd, was working as an unlicensed cab driver. While parked outside a supermarket in Philadelphia, Byrd was advised by another unlicensed cab driver, Richard Jackson, to refuse to give appellant a ride because appellant had previously failed to pay Jackson for a ride. Overhearing this exchange, appellant became angry with Jackson and threatened to kill him. Ap-

---

1. Notwithstanding the limited nature of our allocatur grant, appellant also attempts to challenge the weight and sufficiency of the evidence. These claims were neither raised in the allocatur petition, nor the subject of our grant of review. Accordingly, they will not be considered. *Commonwealth v. Davis*, 543 Pa. 628, 632 n. 6, 674 A.2d 214, 216 n. 6 (1996), *citing* Pa.R.A.P. 1115(a)(3); *Commonwealth v. Rush*, 522 Pa. 379, 386–87, 562 A.2d 285, 288 (1989).

pellant then walked away from the parking lot and vowed to return.

A short time later, appellant returned to the supermarket parking lot with his cousin, David Thompson. With Jackson no longer present, appellant and Thompson began arguing with Byrd. Thompson attempted to strike Byrd, but Byrd blocked the blow. At that point, Thompson instructed appellant to shoot Byrd. Appellant withdrew a gun from his jacket and fatally shot Byrd once in the chest. Both men fled the scene and were later arrested.

Following his arrest, Thompson gave a statement to the police in which he admitted that he had driven appellant to the supermarket for the express purpose of finding Jackson, and that he knew that appellant had taken the gun used in the killing from his car. Thompson also admitted that he had punched Byrd and that he had instructed appellant to shoot him.

Appellant and Thompson were tried jointly by a jury. Prior to trial, appellant moved to sever his case from Thompson's on the ground that the introduction of Thompson's confession would violate appellant's Sixth Amendment right to confront a witness against him. The trial court denied severance, but ordered that Thompson's confession be redacted to replace any specific reference to appellant by name with the neutral term, "the other man." Furthermore, the trial court issued a cautionary instruction to the jury, informing the jury that Thompson's statement could only be considered as evidence against Thompson. The cautionary instruction was given to the jury twice—immediately after the police officer read Thompson's statement into the record, and during the trial court's final jury charge.

On October 26, 1995, the jury convicted appellant and Thompson of first degree murder, possession of an instrument of crime and criminal conspiracy. The two men were sentenced to life imprisonment for the murder convictions with no further penalty imposed for the additional offenses. On appeal to the Superior Court, appellant claimed, *inter alia,*

that the trial court erred in denying his motion for severance because the admission of Thompson's confession at the joint trial, even as redacted and subject to a cautionary charge, violated his right to confrontation. The Superior Court rejected the claim on the basis of its recent decision in *Commonwealth v. McGlone*, 716 A.2d 1280 (Pa.Super.1998), and affirmed the judgment of sentence. This Court granted allocatur to address the question of whether the redaction here was adequate under *Bruton* and *Gray*.

The decision of whether to sever trials of co-defendants is within the sound discretion of the trial court. *Commonwealth v. Lopez*, 559 Pa. 131, 739 A.2d 485 (1999). Both this Court and the United States Supreme Court have recognized that joint trials of co-defendants play a crucial role in the criminal justice system. *See Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987); *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992); *Commonwealth v. Jackson*, 451 Pa. 462, 303 A.2d 924 (1973); *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954).

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

*Richardson*, 481 U.S. at 210, 107 S.Ct. at 1708–09. However, we have also recognized that there are potential difficulties arising from joint trials. A common problem arises in situations where evidence is admissible against one co-defendant but inadmissible against another. As a general matter, an instruction to the jury that it is to consider that evidence only with respect to the defendant against whom it is offered is sufficient to remove any potential prejudice:

Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a co-defendant. This accords with the almost invariable assumption of the law that jurors follow their instructions....

*Id.* at 206, 107 S.Ct. at 1707 (*citing Francis v. Franklin,* 471 U.S. 307, 325 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985)). *See also Commonwealth v. Travaglia,* 541 Pa. 108, 127, 661 A.2d 352, 361 (1995) ("The presumption in our law is that the jury follows instructions.").

In *Bruton,* however, the Supreme Court recognized a narrow exception to the general rule that cautionary instructions are sufficient to eradicate any potential prejudice in joint trials. In *Bruton,* the trial court admitted into evidence at a joint trial the confession of Bruton's non-testifying co-defendant, which named and incriminated Bruton in the armed robbery on trial. The court instructed the jury that the confession "if used, can only be used against [Bruton's co-defendant]," and could not be considered in the case against Bruton. *Bruton,* 391 U.S. at 126 n. 2, 88 S.Ct. at 1622 n. 2. The Supreme Court reversed, holding that the admission of the facially incriminating statement by the non-testifying co-defendant violated Bruton's right of cross-examination guaranteed by the confrontation clause of the Sixth Amendment, notwithstanding the jury charge. The Court reasoned that:

There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored ... Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect.... The unreliability of such evidence is intolerably compounded when the

alleged accomplice, as here, does not testify and cannot be tested by cross-examination.

*Id.* at 135–36, 88 S.Ct. at 1627–28 (citations and footnotes omitted).

In response to *Bruton,* courts approved the practice of redacting confessions of non-testifying co-defendants to remove references that expressly implicated the defendant. The Supreme Court considered this practice in *Richardson,* 481 U.S. at 200, 107 S.Ct. at 1702. In *Richardson,* the co-defendant's confession was redacted to remove *all* reference to the defendant, and the jury was specifically instructed to consider the confession only against the co-defendant. The defendant argued that, despite the redaction, admission of the co-defendant's confession violated her confrontation rights because it implicated her in the crime when linked with other evidence. The Court expressly rejected the theory of contextual implication, recognizing the important distinction between co-defendant confessions that expressly incriminate the defendant and those that become incriminating only when linked to other evidence properly introduced at trial. *Id.* at 208, 107 S.Ct. at 1707–08. When incrimination is merely inferential, the court noted, "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." *Id.* at 208, 107 S.Ct. at 1708. Where such linkage was required to implicate the defendant, the Court held, a proper limiting instruction was sufficient to satisfy *Bruton. See Gray,* 523 U.S. at 195, 118 S.Ct. at 1156 (*"Richardson* placed outside the scope of *Bruton's* rule those statements that incriminate inferentially."). But the *Richardson* Court was careful to express "no opinion" on the admissibility of a confession where the redaction consists of replacing the defendant's name "with a symbol or neutral pronoun." 481 U.S. at 211 n. 5, 107 S.Ct. at 1713 n. 5.

Like other courts interpreting *Bruton,* this Court has specifically approved of redaction and a limiting instruction as a means of eliminating any possible prejudice arising from the admission of a co-defendant's confession at a joint trial. Thus, in *Commonwealth v. Johnson,* 474 Pa. 410, 378 A.2d 859

(1977), we noted that, "[t]he basic theory of redaction seems sound. If a confession can be edited so that it retains its narrative integrity and yet in no way refers to defendant, then use of it does not violate the principles of *Bruton.*" *Id.* at 412, 378 A.2d at 860. *See Commonwealth v. Uderra,* 550 Pa. 389, 398–99, 706 A.2d 334, 339 (1998) (noting that *Johnson* "approved redaction as an appropriate method of protecting a defendant's rights under *Bruton* "): *see also Commonwealth v. Lopez,* 559 Pa. 131, 157–58, 739 A.2d 485, 499–500 (1999) (statement referring to "other guys" complied with *Bruton* ). In *Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (1986), a case pre-dating *Richardson,* we reaffirmed this holding and explicitly rejected a blanket rule that would prohibit the introduction of redacted confessions that implicate the defendant by contextual implication, explaining that such a rule would have "the likely effect of making all statements by a co-defendant inadmissible, regardless of whether they could be properly redacted." *Id.* at 174, 512 A.2d at 605. Nevertheless, our *Bruton* jurisprudence occasionally suggested that even properly redacted statements may, in certain "unique circumstances," *id.* at 174, 512 A.2d at 605, implicate *Bruton* where there is a "danger" that "contextual implication" or "evidentiary linkage" makes it obvious that the unnamed person in the redacted statement is the defendant. *Wharton,* 530 Pa. at 140–41, 607 A.2d at 716–17. Under our then-understanding of *Bruton,* that danger, however, merely required the trial court, and the reviewing court, to balance the interests, *i.e.,* the potential prejudice to the defendant versus the probative value of the evidence, the possibility of minimizing the prejudice, and the benefits to the criminal justice system of conducting joint trials. *Id.*

Recently, the United States Supreme Court revisited *Bruton* in *Gray. Gray* addressed one of the questions that *Richardson* had left open: *i.e.,* "whether redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted' or a similar symbol, still falls within *Bruton*'s protective rule." 523 U.S. at 192, 118 S.Ct. at 1155. In *Gray,* the confession of Gray's non-testifying

co-defendant, Bell, was read into evidence at their joint trial. Whenever Gray's name, or the name of a third co-conspirator who had died prior to trial, Jacquin Vanlandingham, appeared in the confession, the police officer who read the statement into evidence substituted the word "deleted" or "deletion." Immediately after the officer had finished reading the confession to the jury, the prosecutor asked him, "after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray, is that correct?" The police officer responded, "That's correct," thus reinforcing the implication that one of the deletions referred to Gray. The prosecution also introduced into evidence a written copy of the confession, which contained a blank space set off by commas appearing wherever Gray's name or Vanlandingham's name appeared. Thus, unlike the redaction in *Richardson,* which removed not only the defendant's name but any reference to her existence, the co-defendant's redacted confession in *Gray* "referr[ed] directly to the existence of the non-confessing defendant." *Id.*

The Supreme Court held that the redaction of Bell's confession was insufficient under *Bruton* because "[a] redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted' or a similar symbol . . . leaves statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result." *Id.* In so holding, the Court noted that a jury will often react similarly to an unredacted confession and a confession redacted in the manner of Bell's confession in *Gray* because the jury will "often realize that the confession refers specifically to the defendant." *Id.* at 193, 118 S.Ct. at 1155. The Court gave an example in which the statement "I, Bob Smith, along with Sam Jones, robbed the bank" was redacted to read, "I, Bob Smith, along with ——, robbed the bank." The Court explained that, "[a] juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones,

for that instruction will provide an obvious reason for the blank." *Id.* at 193, 118 S.Ct. at 1155. The Court also noted that the obvious deletion may well call the juror's attention to the omitted name: "By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation once the jurors work out the reference." *Id.* at 193, 118 S.Ct. at 1155–56. Finally, the Court noted that, like the statements in *Bruton,* the statements in *Gray* were directly accusatory: "The blank space in an obviously redacted confession also points directly to the defendant and it accuses the defendant in a manner similar to Evans' use of Bruton's name or to a testifying co-defendant's accusatory finger." *Id.* at 194, 118 S.Ct. at 1156. Thus, the Court concluded that the *Gray* redaction presented the same confrontation problem as the non-redaction in *Bruton:* the defendant was expressly implicated in the confession of the non-testifying co-defendant. Although the defendant in *Gray* was not specifically named in the confession, the Court concluded that it was nonetheless clear, from the face of the confession itself, that he was the other man.

This was not the end of the *Gray* Court's analysis, however. The Court "concede[d]" that *Richardson* had placed outside the scope of the *Bruton* rule statements that incriminate inferentially, and that the jury in *Gray* had to employ an inference to connect the blanks in that redacted confession to the defendant. *Id.* But the Court refined *Richardson,* concluding that inference "pure and simple" could not make the critical difference in a *Bruton* analysis, since that would exclude shortened first names, nicknames, unique descriptions and the like from *Bruton*'s sweep, while the Court, in other cases, had already at least assumed that the rule would cover those circumstances. *Id.* at 195, 118 S.Ct. at 1156. The Court therefore concluded that, in cases requiring an inference to connect the redacted statement to the defendant, it was the "kind of" inference involved that mattered in the *Bruton* analysis. *Id.* at 196, 118 S.Ct. at 1157. The Court then contrasted the inference in *Richardson* with the inference in *Gray.* In *Richardson,* the inference involved statements that

did not directly refer to the defendant himself and "which became incriminating 'only when linked with evidence introduced later at trial.' " *Id., quoting Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707. In contrast, *Gray* involved statements that, despite redaction, "obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." 523 U.S. at 196, 118 S.Ct. at 1157. In such an instance, the Court noted, the redacted confession, though not naming the defendant, nevertheless "facially incriminates" him, and " 'is more vivid than inferential incrimination, and hence more difficult to thrust out of mind.' " *Id., quoting Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707. *See also United States v. Logan*, 210 F.3d 820, 823 (8th Cir.2000) (obvious redaction in *Gray* was a circumstance that "pointed a finger directly at the defendant").

The Court further distinguished *Richardson* by noting that the policy reasons animating that decision did not require a conclusion that a redaction consisting of obvious deletions comported with *Bruton*. *Richardson* had expressed concern that *Bruton* should not bar co-defendant's confessions where a successful redaction of "confessions incriminating by connection" would not be possible, thus forcing prosecutors "too often to abandon use either of the confession or of a joint trial." *Gray*, 523 U.S. at 196, 118 S.Ct. at 1157. The *Gray* Court noted that *Richardson*'s concern in that regard did not exist by a redaction involving obvious deletions because "additional redaction" of such "symbols" "normally is possible." *Id.* Tellingly, for our purposes, the Court then offered the following example of an "additional" redaction that could have been employed in *Gray* that, it strongly suggested, would survive Sixth Amendment scrutiny under *Bruton* and its progeny:

Consider as an example a portion of the confession before us: The witness who read the confession told the jury that the confession (among other things) said:

"Question: Who was in the group that beat Stacey?
Answer: Me, deleted, deleted, and a few other guys."

Why could the witness not, instead, have said:

"Question: Who was in the group that beat Stacey?

Answer: Me and *a few other guys.*"

*Id.* (emphasis added).[2]

This case, of course, involves the second half of the unanswered question posed in *Richardson:* the viability of a redaction that substitutes a neutral pronoun, rather than a symbol of deletion, for the defendant's name. Specifically, the co-defendant's statement here was redacted to replace references to appellant by name with the term "the other man." Although this was not the type of redaction at issue in *Gray,* the *Gray* Court's reasoning, including its distinction of *Richardson,* leaves little question that this sort of redaction is appropriate under the Sixth Amendment. At a minimum, as one Circuit Court has noted, the Supreme Court "strongly implied" in *Gray* that a redaction employing a neutral pronoun such as "the other guy" does not offend the Sixth Amendment. *See United States v. Akinkoye,* 185 F.3d 192, 198 (4th Cir. 1999).

The rationale employed in *Gray* makes clear that the "kind of" redaction employed here does not implicate *Bruton* concerns in the same way as a statement that incriminates the defendant on its face, either by actually naming him or by an obvious method of deletion that no less certainly points the finger at him. The redacted statement here neither referred to appellant by name (the *Bruton* proscription) nor did it contain an obvious indication of a deletion or an alteration that was the functional equivalent of naming him (the *Gray* proscription). Indeed, use of a neutral pronoun is not an obvious

**2.** As noted above, prior to *Gray,* this Court had suggested that redacted statements that implicated the defendant only through linkage with other evidence at trial could nevertheless trigger confrontation clause concerns under *Bruton. See Commonwealth v. Washington,* 547 Pa. 550, 556, 692 A.2d 1018, 1021 (1997); *Commonwealth v. Marinelli,* 547 Pa. 294, 328, 690 A.2d 203, 220 (1997); *Wharton,* 530 Pa. at 143, 607 A.2d at 718; *Chestnut,* 511 Pa. at 174, 512 A.2d at 605. It is apparent now, after *Gray,* that the Sixth Amendment is only implicated where the implication arises from the *face* of the redacted statement and not from linkage to other evidence.

alteration at all: "For all the jury knew, these were [the non-testifying co-defendant's] actual words, not a modified version of them." *Logan*, 210 F.3d at 823. The "other man" reference employed here was certainly not the sort of reference which, "even were the confession the very first item introduced at trial," obviously referred to the defendant. *Gray*, 523 U.S. at 196, 118 S.Ct. at 1157. *See also McGlone*, 716 A.2d at 1286 (use of term "other man" does not have same powerfully incriminating impact as an obvious deletion, for the term not only eliminates the name of the defendant, it also eliminates a suggestion of alteration: "The powerfully incriminating nature of an obvious and glaring 'hole' in the statement simply is not present when a generic term like 'other man' is used"). Instead, as in *Richardson*, the redacted statement could become incriminating only through independent evidence introduced at trial which established the defendant's complicity and, even then, only if it is assumed that the jury ignored the court's charge.

In light of the governing principles in this area, as most recently elucidated in *Gray*, the redaction here, combined with the trial court's accurate and repeated cautionary charge, sufficed to protect appellant's Sixth Amendment right to confrontation. Since the statement was not powerfully incriminating on its face, the general rule to which *Bruton* and *Gray* are a limited exception, *i.e.*, the "almost invariable assumption of the law that jurors follow their instructions," *Richardson*, 481 U.S. at 206, 107 S.Ct. at 1707; *Commonwealth v. Travaglia, supra*, applies and controls.[3]

3. Appellant argues that, during deliberations, the jury made an inquiry concerning the co-defendant's statement which proves that it considered the co-defendant's confession in assessing his guilt. The jury's question was as follows:

When David Thompson in his statement to the police stated the other man shot Charles Byrd, who was the other man? What is his name? Would it be possible to see his statement?

Appellant's argument, of course, is mere speculation. Indeed, contrary to appellant's interpretation, the question seems to suggest the opposite inference, *i.e.*, that the jurors *did not know* the identity of the other man and wanted to be told who it was—thus, the redaction and the court's charge served their purpose. Furthermore, the jury rendered its verdict before the court responded to its inquiry. This also suggests that the

We note that our decision today is consistent with the Superior Court's construction of *Gray, see McGlone, supra,* as well as the decisions of other courts that have had occasion to interpret *Gray. See United States v. Taylor,* 186 F.3d 1332 (11th Cir.1999) (redacted statement which replaced defendant's name with "they" and "captain" did not violate right of confrontation); *United States v. Verduzco–Martinez,* 186 F.3d 1208, 1214 (10th Cir.1999) (redaction of co-defendant's statement with "the neutral pronoun/phrase 'another person' did not identify [the defendant] or direct the jury's attention to him, nor did it obviously indicate to the jury that the statement had been altered"); *Akinkoye, supra* (4th Cir.1999) (motion to sever properly denied where references to defendant in co-defendant's statement replaced with "another person"); *United States v. Vejar–Urias,* 165 F.3d 337, 340 (5th Cir.1999) ("where a defendant's name is replaced with a neutral pronoun, as long as identification of the defendant is clear or inculpatory only by reference to evidence other than the redacted confession, and a limiting instruction is given to the jury, there is no *Bruton* violation") (dicta); *United States v. Stockheimer,* 157 F.3d 1082, 1086–87 (7th Cir.1998), *cert. denied,* 525 U.S. 1184, 119 S.Ct. 1127, 143 L.Ed.2d 121 (1999) (statements of co-defendants that incriminate other defendants only when viewed "in conjunction with other evidence introduced at the trial" do not warrant severance under *Gray*); *United States v. Valdez,* 146 F.3d 547, 551–52 (8th Cir.1998), *cert. denied,* 119 S.Ct. 355 (1998) (reference in confessing defendant's statement to his "accomplice" did not violate *Gray* because it did not suggest that a proper name was purposefully omitted, confession on its face did not implicate co-defendant, and only by linking confession to other evidence could jury infer accomplice's identity).

The order of the Superior Court is affirmed.

ZAPPALA and NIGRO, JJ., concur in the result.

jurors followed the court's instructions to consider Thompson's confession only as evidence against Thompson.