J-S04022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KINTA STANTON | |
| Appellant | No. 1665 EDA 2019 |

Appeal from the PCRA Order May 7, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007248-2008

BEFORE:  BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                **FILED MAY 4, 2020**

Appellant, Kinta Stanton, who is serving a sentence of 12½—25 years' imprisonment for conspiracy to commit third degree murder and involuntary manslaughter,[1] appeals from an order denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  Appellant argues that trial counsel was ineffective for failing to move to sever his case from his co-defendants.  We affirm.

On March 26, 2008, Appellant left Simon Gratz High School in the middle of the school day with several friends, including co-conspirators Ameer Best, Nashir Fisher, Rasheem Bell, and Arthur Alston, and rode the subway to a shopping mall on Market Street in downtown Philadelphia.  While the group walked around the subway concourse, they discussed how they were "not

---

[1] 18 Pa.C.S.A. §§ 903 and 2504, respectively.

scared" to punch a complete stranger. In the course of the conversation, Appellant and each of his co-conspirators expressed willingness to take part in such an attack.

About ten minutes later, at about 2:30 p.m., Appellant and his co-conspirators began following Sean Conroy, who was on his way to a Starbucks coffee shop, where he worked as a manager. After following Conroy together for two or three minutes, Alston approached Conroy and punched him in the head from behind. Appellant and each of the other co-conspirators joined Alston in punching Conroy. Each person, including Appellant, hit Conroy multiple times. Conroy, who suffered from asthma, collapsed, but the group continued their attack. Appellant and his co-conspirators continued to beat Conroy after he showed signs of physical distress, and several of them began to kick and stomp him as well.

Alerted by Conroy's cry for help and the assailants' "raucous laughter," two transit police officers rushed to intervene. When Officer Omari Bervine arrived, one of the attackers said "oh shit," and they all fled. Officer Bervine gave chase, capturing Appellant before he could escape the concourse. Conroy, who lost consciousness, was rushed to Thomas Jefferson University Hospital, where he was pronounced dead within minutes. The medical examiner determined, through an autopsy, that "[t]he cause of death was asthma, contributed to by multiple blunt force injuries, and the manner of death was [h]omicide." Conroy suffered abrasions and bruises in five separate regions of his head that were consistent with having been punched; four

broken ribs consistent with having been kicked or stomped; and abrasions to both legs consistent with having been kicked or stomped. The stress of the assault triggered an acute asthma attack, leading to a fatal loss of oxygen to his brain.

Appellant and his co-conspirators were interviewed separately by police. Each gave statements admitting involvement in the conspiracy but attempting to minimize their roles in the attack. Each admitted to agreeing with the others to attack Conroy but claimed not to have landed any blows.

Appellant was charged with criminal homicide and conspiracy and was tried together with his co-conspirators. At trial, the Commonwealth relied on Appellant's statement, the testimony of the transit officers and the medical examiner, and the testimony of co-conspirator Raheem Bell, who already had pleaded guilty to third-degree murder and criminal conspiracy. The jury found Appellant guilty of involuntary manslaughter and criminal conspiracy to commit third-degree murder.

The Superior Court affirmed the judgment of sentence for involuntary manslaughter but vacated the judgment of sentence for criminal conspiracy on the ground that conspiracy to commit third degree murder was not a cognizable offense under Pennsylvania law. The Commonwealth appealed to our Supreme Court, which reinstated the judgment of sentence for criminal conspiracy. *Commonwealth v. Fisher*, 80 A.3d 1186, 1195-96 (Pa. 2013) (conspiracy to commit third degree murder is cognizable offense under Pennsylvania law).

On September 16, 2014, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition claiming that trial counsel was ineffective for failing to request a motion to sever Appellant's case from his co-defendants. Following issuance of a Rule 907 notice of its intent to dismiss, the PCRA court dismissed the petition. This timely appeal followed. Without ordering Appellant to file a Pa.R.A.P. 1925 statement, the PCRA court filed an opinion articulating its reasons for dismissing Appellant's petition.

Appellant raises a single argument in this appeal: "Did the Trial/PCRA Court err in dismissing the [PCRA] petition, without a hearing, even though Appellant pled that he was victimized by ineffective assistance of trial counsel who failed to file a pretrial Motion for Severance?" Appellant's Brief at 3. No relief is due because Appellant cannot demonstrate at the outset arguable merit.

We presume counsel's effectiveness, and Appellant bears the burden of proving otherwise. ***Commonwealth v. Urwin***, 219 A.3d 167, 172 (Pa. Super. 2019). To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: (1) his underlying legal claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions prejudiced him. ***Id.*** Failure to satisfy any of these three prongs requires dismissal of the claim. ***Id.***

When reviewing a PCRA order, we examine whether the record supports the PCRA court's factual findings and whether its legal conclusions are free

from error. *Commonwealth v. Hannibal*, 156 A.3d 197, 206 (Pa. 2016). We view the PCRA court's findings and evidence of record in the light most favorable to the prevailing party. *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). The PCRA court's credibility determinations, when supported by the record, are binding, but we review the PCRA court's legal conclusions de novo. *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013). The petitioner has the burden of persuading us that the PCRA court erred and that such error requires relief. *Commonwealth v. Wholaver*, 177 A.3d 136, 144-45 (Pa. 2018).

Appellant's claim lacks arguable merit because a motion to sever would have been unsuccessful. The decision whether to sever trials of codefendants is within the sound discretion of the trial court, and we will not disturb this decision absent a manifest abuse of discretion. *Commonwealth v. Wharton*, 607 A.2d 710, 717 (Pa. 1992); *see* Pa.R.Crim.P. 582(A)(2) and 583. In cases where co-defendants are charged with conspiracy, severance is disfavored because

> [i]t would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

*Commonwealth v. Travers,* 768 A.2d 845, 847 (Pa. 2001). Here, severance was unwarranted because Appellant and his co-defendants were charged with conspiracy; the vast majority of the evidence presented at trial was equally admissible against all three of them; and the prosecution's case required the testimony of fifteen witnesses, including the victim's fiancée. Separate trials for each defendant under these circumstances "would have placed a heavy burden upon the judicial system as well as the public," *Commonwealth v. Jones*, 668 A.2d 491, 502 (Pa. 1995), needlessly subjected the witnesses to great inconvenience and trauma, and randomly favored whichever of the three defendants was tried last.

We also observe that the record reflects Appellant's co-defendant, Best, filed a motion for severance prior to trial, but the trial court denied the motion. Best filed a direct appeal. In the course of affirming Best's judgment of sentence, this Court held that the trial court properly denied the motion for severance. *Commonwealth v. Best*, —A.3d—, 3273 EDA 2009, at 9-10 (Pa. Super., Feb. 2, 2011) (unpublished memorandum). This result demonstrates that it would have been an exercise in futility for Appellant to have moved for severance.

Appellant next contends that his defense was "antagonistic" with those of his co-defendants simply because he claimed not to have struck the victim. As an initial matter, the Commonwealth's evidence established that Appellant indeed struck the victim. N.T. 8/17/09, at 248. Although each defendant

attempted to shift blame from himself by pointing the finger at the other defendants, such defenses are not antagonistic. As our Supreme Court once said:

> [T]he mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials. In fact, it has been asserted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.

***Commonwealth v. Birdsong***, 24 A.3d 319, 336 (Pa. 2011). Thus, the fact that Appellant claimed not to have struck the victim and blamed the other defendants for the victim's death provided good reason to try him with the other defendants, because it was easier to determine the truth by trying them together.

Finally, we reject Appellant's contention that severance was necessary to avoid implicating him through admission of his co-defendants' statements to police. The co-defendants' statements were properly redacted pursuant to ***Bruton v. United States***, 391 U.S. 123 (1968), and its progeny to replace references to Appellant with non-specific words and phrases such as "another guy." N.T. 8/19/09, at 70-73, 229-36. The trial court further guarded against any danger of undue prejudice by instructing the jury that any of the co-defendants' statements could only be considered against the co-defendant who made the statement. N.T. 8/24/09, 198-99. Thus, admission of the co-defendants' statements did not require severance. ***Travers***, 768 A.2d at 848

(severance unnecessary because substitution of phrases such as "the other man" for any specific references to defendant by name was sufficient to protect his Confrontation Clause rights); ***Commonwealth v. Overby***, 809 A.2d 295, 303 (Pa. 2002) (co-defendant's statement that implicated defendant by contextual implication through reference to other trial evidence admissible with redaction and cautionary instruction).

For these reasons, the PCRA court properly dismissed Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/04/2020