J-S24037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL STYERS | : | |
| | : | |
| Appellant | : | No. 864 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 18, 2014
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s):  CP-17-CR-0000889-2008

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED: September 3, 2021**

Appellant Michael Styers files a second appeal from the judgment of sentence entered in the Court of Common Pleas of Clearfield County on June 18, 2014 after Appellant's direct appeal rights were reinstated *nunc pro tunc*. Appellant claims the trial court erred in (1) denying his motion to sever his trial from his co-defendants' prosecution, (2) dismissing his claim that he was denied due process through misconduct of the lead investigator, and (3) refusing to grant a new trial based on after-discovered evidence.  We affirm.

We previously summarized the factual background of this case as follows:

> On September 25, 2008, a statewide investigating grand jury issued a presentment finding that Appellant was the head of a cocaine distribution ring in Clearfield County between 2005 and 2007. The Office of Attorney General consequently filed charges

_____

[*] Former Justice specially assigned to the Superior Court.

against Appellant and 13 others, and the cases were consolidated for trial.[FN2]  During the eight-day trial, 24 witnesses testified that Appellant repeatedly sold or traded cocaine, heroin, OxyContin, Dilaudid, methadone, and Fentanyl. A *petit* jury convicted Appellant of twelve counts of possession with intent to deliver a controlled substance (PWID), one count of conspiracy to commit PWID, one count of corrupt organizations, one count of conspiracy to commit corrupt organizations, two counts of dealing in proceeds of unlawful activities, and one count of criminal use of a communications facility. Following a post-trial evidentiary hearing, the trial court imposed an aggregate sentence of 22 to 44 years in prison, which included several mandatory minimum sentences based on the weight of drugs involved.

> [FN2:] Before trial, the trial court precluded the Commonwealth from calling certain witnesses because of discovery violations. The Commonwealth appealed, and we reversed and remanded for trial. **See Commonwealth v. Hemingway**, 13 A.3d 491 (Pa.Super.2011).  On remand, only Appellant and two codefendants[, Maharaji Hemingway and Charles Gearhart)] proceeded to trial, as the other defendants pled guilty.

**Commonwealth v. Styers**, 1999 WDA 2014, 2015 WL 6681168, at *1 (Pa.Super. 2015) (unpublished memorandum) (some footnotes omitted).

In Appellant's first appeal, this Court rejected Appellant's challenges to the sufficiency of the evidence.  However, this Court *sua sponte* determined that the trial court's imposition of the mandatory minimum sentences violated the ruling of the Supreme Court of the United States in **Alleyne v. U.S.**, 570 U.S. 99, 133 S.Ct. 2151 (2013), which requires that facts that trigger a mandatory minimum sentence must be found by a jury beyond a reasonable doubt.  As this violation rendered Appellant's sentence illegal, this Court remanded for resentencing.  **Commonwealth v. Styers**, 142 WDA 2013, 2014 WL 10980043 (Pa.Super. 2014) (unpublished memorandum).

On remand, on June 18, 2014, the trial court restructured Appellant's sentence to avoid imposition of mandatory minimum sentences but again imposed an aggregate sentence of 22-44 years' imprisonment by running Appellant's individual sentences consecutively. Appellant filed a post-sentence motion, which the trial court denied.

On August 21, 2015, this Court affirmed the judgment of sentence and dismissed Appellant's challenges to the discretionary aspects of his sentence as he had waived these arguments by failing to properly raise them before the trial court, preserve them in his Pa.R.A.P. 1925(b) statement, and develop the arguments in his appellate brief. *Commonwealth v. Styers*, 1999 WDA 2014, 2015 WL 6681168 (Pa.Super. 2015) (unpublished memorandum). Appellant did not file a petition for allowance of appeal to the Supreme Court.

On January 12, 2017, the lower court docketed Appellant's *pro se* PCRA petition. On March 6, 2017, the lower court docketed Appellant's *pro se* "Motion for Extension of Time to File an Amended PCRA petition." On April 10, 2017, the PCRA court appointed Christopher Martini, Esq. After Attorney Martini was granted two motions for extensions of time to file an amended petition, on January 26, 2018, he filed a motion for the appointment of new counsel as he accepted a position as the Cameron County Public Defender and could not devote the necessary time needed in this case.

After the PCRA court did not act on Attorney Martini's request for the appointment of counsel, Attorney Martini filed a second motion for the

- 3 -

appointment of new counsel on June 15, 2018. Appellant also filed two motions for the appointment of counsel on April 11, 2018 and July 30, 2018.

On August 14, 2018, the PCRA court appointed Ryan Sayers, Esq. On November 28, 2018, Attorney Sayers filed a motion to withdraw claiming he had a conflict of interest as he represented one of the witnesses that testified against Appellant at his trial. On December 10, 2018, the PCRA court granted Attorney Sayers' motion to withdraw, but did not appoint another counsel.

On March 14, 2019 and October 3, 2019, Appellant filed two additional motions for the appointment of counsel. On December 19, 2019, the PCRA court appointed Amy Stoak, Esq. as Appellant's counsel. On February 20, 2020, Appellant filed a *pro se* motion to amend his original PCRA petition.

On June 22, 2020, Attorney Stoak filed an amended PCRA petition on Appellant's behalf arguing that trial counsel was ineffective in failing to raise two issues on direct appeal, claiming (1) Appellant's trial should have been severed from that of his co-defendants, and (2) the prosecutor and investigating agent coerced and threatened witnesses to testify. PCRA counsel also claimed Appellant was entitled to a new trial based on after-discovered evidence, specifically, a February 2011 letter written by one of Appellant's co-defendants, Gearhart, alleging that one of the investigating agents had coerced him into fabricating testimony against Appellant and Hemingway.

In the amended petition, Appellant acknowledged his PCRA petition appeared untimely. As this Court affirmed the judgment of sentence on August 21, 2015 and Appellant did not file a petition for allowance of appeal

with the Supreme Court, the judgment of sentence became final thirty days later on September 20, 2015 and Appellant was required to file a PCRA petition by September 20, 2016.  **See** 42 Pa.C.S.A. § 9545(b) (requiring a petition to be filed within one year of the judgment of sentence becoming final).

While Appellant's *pro se* PCRA petition was not docketed until January 12, 2017, Appellant noted that he had originally placed his PCRA petition in the prison mailbox on June 24, 2016.  In support of this claim, Appellant noted that the memorandum in support of his petition was self-dated June 5, 2016 and submitted his inmate bill for postage.  Further, Appellant asserted that he served the prosecution with a copy of his PCRA petition at that time.

Therefore, Appellant asked the PCRA court to deem his petition as having been timely filed on June 24, 2016 according to the prisoner mailbox rule.  Amended petition at ¶ 13-19 (unpaginated).  **See Commonwealth v. DiClaudio**, 210 A.3d 1070, 1074 (Pa.Super. 2019) (clarifying that the mailbox rule provides that "a pro se prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing").

On July 17, 2020, the PCRA court held a hearing on Appellant's PCRA petition, but the proceeding was not transcribed.  On July 20, 2020, the PCRA court entered a one-page order reinstating Appellant's right to file a direct appeal indicating that the prosecution did not oppose reinstatement of Appellant's direct appeal rights *nunc pro tunc*.  In its order, the PCRA court did not make any express findings as to the timeliness of Appellant's PCRA petition.  This timely appeal followed.

Before we reach the merits of the issues raised on appeal, we must address the lower court's decision to grant Appellant's PCRA petition to the extent that it reinstated Appellant's direct appeal rights *nunc pro tunc*. Our courts have recognized that "if there is a timely PCRA petition vesting the PCRA court with jurisdiction, then the PCRA court may reinstate the petitioner's direct appeal rights." **Commonwealth v. Koehler**, ___Pa.___, 229 A.3d 915, 931 (2020).

As noted above, the PCRA court did not make any express findings with regard to the timeliness of Appellant's underlying PCRA petition. However, based on the fact that the Commonwealth did not object to the timeliness of the filing of Appellant's PCRA petition or his assertion that he served the prosecution with his petition in a timely manner, it appears that the PCRA court credited Appellant's assertion that he mailed his PCRA petition from prison on June 24, 2016, but it was not docketed until January 12, 2017.

While it would have been preferable for the PCRA court to make direct findings as to the timeliness of Appellant's petition, which is a jurisdictional prerequisite, we find that a breakdown in the lower court processes occurred when Appellant's initial PCRA petition was not docketed in a timely manner. As such, the PCRA court had jurisdiction to rule on Appellant's petition and to reinstate his direct appeal rights *nunc pro tunc*.

Appellant raises the following issues for our review:

1. Should [Appellant's] case have been severed from those of his co-defendants from trial?

2. Is [Appellant] entitled to reversal of his conviction, where evidence shows that the Deputy Attorney General prosecuting his case, and the investigating agent, threatened and coerced witnesses to offer testimony against [Appellant]?

3. Was [Appellant] entitled to a new trial on the basis of the discovery after trial of a letter from his co-defendant, Charles Gearhart, which materially undermined the Commonwealth's evidence against him?

Appellant's Brief, at 1-2 (issues reordered for review).

In his first claim, Appellant asserts that the trial court erred in denying his motion to sever his case from with the prosecution of his co-defendants.

In reviewing this claim, we are guided by the following principles:

> The decision of whether to sever trials of co-defendants is within the sound discretion of the trial court. *Commonwealth v. Lopez*, 559 Pa. 131, 739 A.2d 485 (1999). Both this Court and the United States Supreme Court have recognized that joint trials of co-defendants play a crucial role in the criminal justice system. *See Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987); *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992); *Commonwealth v. Jackson*, 451 Pa. 462, 303 A.2d 924 (1973); *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954).

*Commonwealth v. Travers*, 564 Pa. 362, 365, 768 A.2d 845, 846–47 (2001).

> Where … the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:
>
>> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and

randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

***Commonwealth v. Travers****,* 564 Pa. 362, 768 A.2d 845, 847 (2001) (quoting ***Richardson****,* 481 U.S. at 210, 107 S.Ct. 1702). Given this preference, the burden is on defendants to "show a real potential for prejudice rather than mere speculation." *Gribble,* 863 A.2d at 462; ***see Commonwealth v. Rivera****,* 565 Pa. 289, 773 A.2d 131, 137 (2001); ***Commonwealth v. Chester****,* 526 Pa. 578, 587 A.2d 1367, 1372–73 (1991); Pa.R.Crim.P. 583. "Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice." ***Commonwealth v. Lambert****,* 529 Pa. 320, 603 A.2d 568, 573 (1992). Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, "the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together." [***Commonwealth v.***] ***Gribble****,* [580 Pa. 647,] 863 A.2d [455,] 462 [(2004)] (quoting ***Chester****,* 587 A.2d at 1373).

***Commonwealth. v. Rainey***, 593 Pa. 67, 94–95, 928 A.2d 215, 231–32

(2007). Moreover,

severance should be granted only where the defenses are so antagonistic that they are irreconcilable—*i.e.,* the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant. ***Commonwealth v. Williams****,* 554 Pa. 1, 720 A.2d 679, 685 (1998), *cert. denied,* 526 U.S. 1161, 119 S.Ct. 2052, 144 L.Ed.2d 219 (1999); ***Commonwealth v. Lambert****,* 529 Pa. 320, 603 A.2d 568, 573 (1992); ***Chester****,* 587 A.2d at 1373. Thus, a defendant claiming error on appeal has the burden of demonstrating that he suffered actual, not speculative, prejudice because of the ruling permitting a joint trial. ***Rivera****,* 773 A.2d at 137.

***Commonwealth v. Brown***, 592 Pa. 376, 401, 925 A.2d 147, 161–62 (2007).

Appellant does not challenge the Commonwealth's assertion that the consolidation of Appellant's case with those of his co-defendants promoted judicial economy and enhanced fairness among the three defendants. At trial, the prosecution presented more than twenty witnesses with knowledge relevant to the drug distribution organization of which Appellant and his co-defendants participated. Consolidating the three cases eliminated the inconvenience and burden for the prosecution to require these witnesses to give testimony at multiple prosecutions. In addition, if Appellant was tried separately first, he could then argue his co-defendants received a tactical advantage of seeing the prosecution's case in advance.

We further note that the trial court found that this case did not involve circumstances in which "antagonistic defenses existed or defenses were on a collision course … as the three defendants were united in terms of attacking the historical nature of the investigation and challenging the credibility of the Commonwealth's witnesses." Trial Court Opinion, 2/21/21, at 11.

The only argument Appellant develops to support his claim that his trial should have been severed from his co-defendants' trial is his suggestion that it was unfair to allow the Commonwealth to introduce the statements that his co-defendant Charles Gearhart gave to the grand jury, which Appellant claims directly implicated him and were antagonistic to Appellant's defense.

This particular argument implicates the principles set forth in **Bruton v. United States**, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the Supreme Court of the United States held that "the admission of [a] facially

incriminating statement by the non-testifying co-defendant violate[s a defendant's] right of cross-examination guaranteed by the confrontation clause of the Sixth Amendment, notwithstanding [a] jury charge" that instructs the jury that the co-defendant's statement could only consider that testimony against the co-defendant. *Travers*, 564 Pa. at 366, 768 A.2d at 847 (quoting *Bruton*, 391 U.S. at 135-36, 88 S.Ct. 1627-28).

However, our courts have since "specifically approved of redaction and a limiting instruction as a means of eliminating any possible prejudice arising from the admission of a co-defendant's confession at a joint trial." *Travers*, 564 Pa. at 367-68, 768 A.2d at 848. The *Travers* court noted that "[i]f a confession can be edited so that it retains its nature and integrity and yet in no way refers to [the] defendant, then use of it does not violate the principles of *Bruton*." *Id*. (quoting *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977)). In *Travers*, the Supreme Court found that prosecution did not violate the Sixth Amendment or *Bruton* when it introduced the co-defendant's confession which was redacted such that references to Travers were replaced with the phrase "the other guy" and the trial court instructed the jury of the limited purpose of the confession.

In this case, in accordance with *Bruton* and *Travers*, the parties worked together to redact Gearhart's grand jury statement to replace references to Appellant and Hemingway with neutral pronouns such as "he" and "him." Appellant does not specifically argue how he believes that Gearhart's statement implicated him despite the parties' redactions.

In addition, the trial court also gave the jury an explicit instruction prior to the admission of Gearhart's grand jury testimony that they could not consider this testimony as evidence against Hemingway or Appellant, but solely as evidence against Gearhart. N.T. 1/31/12, at 13-14. The trial court repeated this instruction during the final jury charge. N.T. 2/1/12, 63-64.

As a result, Appellant has not shown how the admission of Gearhart's statement rendered his defense so antagonistic to the defenses of his co-defendants that they were irreconcilable. Accordingly, Appellant failed to show that the trial court abused its discretion in consolidating Appellant's trial with his co-defendants' prosecution.

Appellant's second and third claims are intertwined. Appellant contends that he is entitled to a new trial based on his allegations that the lead investigator coerced and threatened witnesses into testifying against Appellant. The sole support Appellant provides for this claim is his attempt to produce after-discovered evidence, namely, a letter purportedly written by Appellant's co-defendant Gearhart, in which Gearhart states that his statements to police and prior grand jury testimony were coerced by Agent David Jordan.[1]

Specifically, in this letter, Gearhart alleges that Agent Jordan coached his testimony and forced him into testifying against Appellant by threatening

---

[1] While Appellant alleges in the statement of questions presented portion of his brief that he is entitled a new trial based on the misconduct of both Agent Jordan and the Deputy Attorney General prosecuting his case, he does not include any allegations of coercion related to that prosecutor.

to prosecute Gearhart for uncharged drug offenses if he refused to testify as Agent Jordan wished. Appellant claims he did not discover the existence of this letter until after he was sentenced. Amended Petition, 6/22/20, at 7.

It is well-established that, to be granted a new trial based on the basis of after-discovered evidence, a petitioner must demonstrate that the evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa.Super. 2010) (quoting ***Commonwealth v. Pagan***, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008), *cert. denied,* 555 U.S. 1198, 129 S.Ct. 1378, 173 L.Ed.2d 633 (2009) (citations omitted). In addition, "the proposed new evidence must be producible and admissible." ***Commonwealth v. Castro***, 625 Pa. 582, 594, 93 A.3d 818, 825 (2014).

To the extent that Appellant is attempting to raise an after-discovered evidence claim on direct appeal, the proper procedure to do so would have included a request for a remand to the trial judge. Pennsylvania Rule of Criminal Procedure 720(c) provides as follows:

> **After-discovered evidence**. A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery.

Pa.R.Crim.P. 720(c). The comment to that rule states that:

> Unlike ineffective counsel claims, which are the subject of ***Commonwealth v. Grant***, 572 Pa. 48, 813 A.2d 726 (2002), paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge; and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA. ***See*** 42 Pa.C.S. § 9545(b)(1)(ii) and (b)(2) (PCRA petition raising after-discovered evidence must be filed within 60 days of date claim could have been presented). ***Commonwealth v. Kohan***, 825 A.2d 702 (Pa. Super. 2003), is superseded by the 2005 amendments to paragraphs (A) and (C) of the rule.

Pa. R. Crim. P. 720, cmt.

As noted above, Appellant raised this after-discovered evidence claim for the first time in his amended PCRA petition. After the PCRA court held a hearing, which was not transcribed, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc* based on the parties' agreement but did not discuss whether a remand was necessary for the evaluation of Appellant's after-discovered evidence claim. On appeal, Appellant failed to request a remand to the lower court for an evidentiary hearing to present further support for his after-discovered evidence claim.

Nevertheless, we agree with the trial court's assessment that Appellant has failed to meet his burden to show he is entitled to a new trial based on after-discovered evidence. First, Appellant does not include any allegations to show why the letter could not have been obtained at or prior to trial through

reasonable diligence. With respect to the reasonable diligence prong, this Court has held that:

> a defendant has a duty to bring forth any relevant evidence in his behalf. ***Commonwealth v. Johnson,*** 228 Pa.Super. 364, 323 A.2d 295, 296 (1974). A defendant cannot claim he has discovered new evidence simply because he had not been expressly told of that evidence. ***Commonwealth v. Crawford***, 285 Pa.Super. 169, 427 A.2d 166, 175 (1981). Likewise, a defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence. ***Commonwealth v. Chambers***, 528 Pa. 558, 583, 599 A.2d 630, 642 (1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable relationship. ***See Commonwealth v. Parker***, 494 Pa. 196, 200, 431 A.2d 216, 218 (1981) (holding defendant did not exercise reasonable diligence where he failed to learn before or during trial of girlfriend's confession to murder for which he was on trial).

***Padillas***, 997 A.2d at 364.

Appellant alleges that Gearhart purportedly sent this letter to counsel for co-defendant Hemingway in February 2011, but offers no explanation as to when or how he came into possession of the letter or as to why he did not discover this letter earlier. As Appellant's trial began in January 2012, nearly eleven months after this letter was written, we agree with the trial court's assessment that Appellant failed to show he acted promptly in presenting this claim for the first time in his amended PCRA petition in June 2020.

Even assuming *arguendo* that Appellant acted promptly in raising this claim and requested a remand for a hearing, Appellant has failed to articulate

in his motion or on appeal what producible or admissible evidence he could present that would entitle Appellant to a new trial. **Castro**, **supra**.

While Appellant presents a letter purportedly written by Gearhart that alleges that Gearhart's grand jury testimony was coerced by an investigator, Appellant does not seek to authenticate this letter and did not identify Gearhart as a potential witness at an evidentiary hearing on this claim.

Further, as noted above, the trial court specifically instructed the jury on two occasions that it could only consider Gearhart's grand jury testimony (which Appellant alleges was coerced) as evidence of Gearhart's guilt. The trial court provided clear limiting instructions that Gearhart's grand jury testimony could not be considered against Appellant and the parties removed all references to Appellant from that statement.

Even if Gearhart would testify to the coercion of his grand jury testimony, his allegations have no relevance to Appellant's guilt. In conjunction with the overwhelming evidence the Commonwealth presented in support of Appellant's guilt as twenty-four witnesses testified as to Appellant's sale of controlled substances, the trial court is correct that Appellant failed to demonstrate how Gearhart's allegations would likely result in a different verdict if a new trial were granted. As such, Appellant did not meet his burden to show he is entitled to a new trial based on after-discovered evidence.

For the foregoing reasons, we affirm the order denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/3/2021