J-S50038-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
              Appellee        :
                                  :
          v.                 :
                                  :
KAREEM EVANS,              :
                                  :
             Appellant      :     No. 1155 EDA 2020

Appeal from the PCRA Order Entered May 4, 2020
in the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005531-2014

BEFORE:    BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:          **FILED: JUNE 7, 2021**

Appellant, Kareem Evans, appeals from the May 4, 2020 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm.

The PCRA court provided the following background.

> On March 13, 2015, following a trial by jury held jointly with co-defendant, Qudre McMillan, [Appellant] was convicted of rape by threat of forcible compulsion, 18 Pa.C.S. § 3121(a)(2), involuntary deviate sexual intercourse [(IDSI)] by threat of forcible compulsion, 18 Pa.C.S. § 3123(a)(2), robbery by threatening another with or putting another in fear of immediate serious injury, 18 Pa.C.S. § 3701(a)(1)(ii), robbery by taking property from the person of another by force however slight, 18 Pa.C.S. § 3701(a)(1)(v), terroristic threat[s], 18 Pa.C.S. § 2706(a)(1), theft by unlawful taking, 18 Pa.C.S. § 3921(a), criminal conspiracy to commit robbery by threatening another with or putting another in fear of immediate serious injury and criminal conspiracy to commit theft, 18 Pa.C.S. § 903(c).[1] The facts underlying Appellant's convictions were summarized for purposes of direct appeal as follows:

_____

*Retired Senior Judge assigned to the Superior Court.

[1] McMillan was convicted of rape by threat of forcible compulsion, [two counts of robbery], terroristic threats, … theft by unlawful taking, … [and two counts of criminal conspiracy]. He was sentenced to an aggregate term of incarceration of twenty to forty years. His appeal from th[e PCRA] court's denial [of] his request for PCRA relief is currently pending before the Superior Court at Docket No. 1199 EDA 2020.

The victim in this matter is a twenty-year-old resident of Philadelphia and mother of two children. In August of 2014, the victim, a former home health aide, had begun to engage in prostitution, advertising her services as an "escort" on an internet website called "Backpage."

On August 8, 2014, at approximately 3:00 a.m., the victim received a telephone call from a man identifying himself as "Kareem," later identified as [Appellant]. The victim agreed to meet [Appellant] in Bristol Borough, Bucks County. Lorenzo Broggi drove the victim to the prearranged location where she met [Appellant]. [Appellant] then led her on foot to another location, an unoccupied residence located on Cedar Street in Bristol Borough. After entering an unfurnished backroom of that building, the victim plugged the charger for her cellphone into a wall outlet.

The victim, already concerned about the change of location, became frightened when she heard someone jiggling the handle of the front door. When [Appellant] left the backroom and headed for the front door, the victim immediately used her cell phone to call Mr. Broggi, her driver. When [Appellant] returned, he attempted to take the phone from the victim but she was able to temporarily regain control of it. The victim then attempted to leave the building. When she began to do so, she was unexpectedly confronted by a second man, later identified as co-defendant Qudre McMillan. McMillan was armed with a shotgun. He pointed it at her and told her not to move. Raising both hands, the victim told McMillan that he could take the ten dollars in her pocket and her phone. McMillan continued to approach the victim, forcing her to retreat into the backroom.

- 2 -

Once the victim was again in the backroom, [Appellant] physically restrained her from behind and placed his hand over her mouth and nose preventing her from breathing. Fearful for her life, she begged him not to kill her, repeatedly telling him, "I have kids." As she struggled with [Appellant], she heard a car horn sounding. [Appellant] told her "not to f---ing scream" and he would let her live. She complied, and he released her. The victim sat in the corner crying as [Appellant] and McMillan attempted to access the phone to see if she had called anyone. When asked if she had made a call, she told them she had not.

[Appellant] then "dismissed" McMillan from the room and proceeded to orally and vaginally rape the victim, threatening to "punch [her] in [her] f---ing head" and kill her if she did not do what she was told. [Appellant] ejaculated inside her. As [Appellant] sexually assaulted the victim, McMillan occasionally watched from his position in the hallway. When [Appellant] then left the room, McMillan entered. The victim continued to cry as McMillan vaginally raped her. He ejaculated on her buttocks. McMillan then left the room. While the victim waited for her attackers to return, she heard a door shut. When neither attacker returned after two minutes, the victim fled the building.

Shortly after dropping the victim off at the Market Street address where [Appellant] was waiting, Mr. Broggi received a call from the victim. When he answered, the victim did not speak to him. Mr. Broggi heard a scuffle in the background. As he listened, he heard a male voice. Mr. Broggi testified that he heard the victim crying and yelling. He specifically heard her say that she did not have any money with her. He also heard her tell someone to leave her alone, and not to hurt her. The phone call abruptly ended. Realizing that the victim was in trouble, Mr. Broggi returned to Market Street in an attempt to locate the victim. He circled the area sounding the horn of his vehicle. Mr. Broggi's efforts to locate the victim were unsuccessful.

At approximately 4:30 a.m., Arthur Carter and his son were driving on Market Street approaching Cedar Street when the victim ran out from Cedar Street and ran in front of his van. When Mr. Carter lowered his window to speak to her, she told him that he had been raped and that she needed help. Mr. Carter testified that the victim was hysterical, that she was crying, and that her hair looked "like somebody had been dragging her around." Her clothes were askew and her underwear was pulled out of her pants. Mr. Carter called 911 and remained with her until assistance arrived. The victim was then transported from the scene to Abington Memorial Hospital for a Sexual Assault Examination. During that examination, vaginal and rectal swabs were obtained.

A search warrant was obtained for the Cedar Street address. During the search, the cell phone charger to the victim's telephone was found on the floor of the back room of the residence. Police contacted the victim's cell phone carrier who informed them that the victim's cell phone was located at the intersection of Headley Street and Pine Street in Bristol Borough, with an uncertainty of thirty-five meters. [Appellant] was staying at [a residence on Pine Street, which was] located at the intersection of Headley and Pine Streets. That residence is approximately six blocks away from Cedar Street where the assaults occurred.

On August 9, 2014, police observed McMillan in the area of Cedar Street. On that same date, police executed a search warrant at [the Pine Street residence]. When police arrived, [Appellant, his mother, and his fiancée were] present. [Appellant was immediately arrested. He subsequently provided a statement to police admitting to the robbery.] While detectives were executing the search warrant, [Appellant's mother had a telephone conversation on speaker with Appellant's younger brother, Terrance Farley, and McMillan, who were together at the time. Later,] McMillan arrived at the residence. The victim's cell phone was found concealed beneath a seat cushion of a sofa inside the residence. Kalesha Cruz, [Appellant]'s fiancée, told police and later testified that she observed McMillan give [Appellant] the cell phone on Friday, August 8, 2014.

- 4 -

A photo array, which included an image of [Appellant] as Photograph Number 2, was displayed to the victim. The victim almost immediately pointed to Photograph Number 2, gasped, said, "That's him. That's the man who raped me," and began to cry.

The vaginal and rectal swabs of the victim were submitted to the Pennsylvania State Police Bureau of Forensic Services for serological and DNA analysis. The items were determined to contain spermatozoa and the DNA of [Appellant] and McMillan.

Trial Court Opinion[,] 1/6/16, at 2-5 (citations to notes of testimony omitted).

Following the jury's verdict, sentencing was deferred for [Appellant] to be evaluated by the Sexual Offender Assessment Board (SOAB) pursuant to 42 Pa.C.S. § 9799.24. Based upon the findings of the SOAB and with the agreement of the parties, th[e trial] court found [Appellant] to be a Sexually Violent Predator. On July 13, 2015, he was sentenced to an aggregate term of confinement of forty to eighty years.

On August 10, 2015, [Appellant] filed a notice of appeal. On November 21, 2016, the Superior Court affirmed the judgment of sentence. [*See Commonwealth v. Evans*, 159 A.3d 594 (Pa. Super. 2016) (unpublished memorandum).] On December 14, 2016, [Appellant] filed a petition for allowance of appeal. On April 19, 2017, [our] Supreme Court denied the petition. [*See Commonwealth v. Evans*, 168 A.3d 1265 (Pa. 2017).]

On July 12, 2018, [Appellant timely] filed a *pro se* motion for post-conviction relief.

PCRA Court Opinion (PCO), 6/19/20, at 1-4 (capitalization altered; some citations omitted).

The PCRA court appointed counsel,[1] who filed a motion to amend Appellant's PCRA petition on December 3, 2018. The amended petition distilled Appellant's 57-page, *pro se* petition to five claims challenging the constitutionality of Appellant's registration under the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.41, and the effective assistance of trial counsel (1) "for not challenging the testimony of Detective Eric Landamia and the exhibits referred to therein (including C-31, C-32, and C-33) concerning cell phone usage and location as the evidence was not authenticated"; (2) "for not objecting to the admission of statements of [McMillan to Appellant's mother] that were not[,] and could not be[,] sufficiently redacted to exclude references to" Appellant, thereby "violating his right to confront witnesses"; (3) "for not asking for a limiting instruction when the Commonwealth introduced a statement of [McMillan,] a co-defendant not subject to cross-examination[,] admitting acts resembling the crime charged"; and (4) "for not moving to suppress the substance of a telephone conversation[.]" Motion to Amend PCRA Petition, 12/3/18, at ¶¶ 2(a-d)-3. On January 28, 2019, the Commonwealth filed its answer. The PCRA court held a hearing on August 30, 2019. At the hearing, the PCRA court heard testimony from Appellant's trial counsel. Appellant

---

[1] The PCRA court initially appointed different counsel, who was subsequently granted leave to withdraw based upon his prior representation of McMillan.

and the Commonwealth filed post-hearing briefs.  On May 4, 2020, the PCRA court dismissed Appellant's PCRA petition.

This timely-filed notice of appeal followed.  Appellant complied with the PCRA court's order to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  The PCRA court filed a Rule 1925(a) opinion.  On appeal, Appellant presents the following issues for our review:

> 1. Was counsel ineffective for failing to object to the admission of evidence of a telephone conversation between [McMillan and Appellant's m]other[, which] violated [Appellant's] right to confrontation?
>
> 2. Was counsel ineffective for failing to object to the admission of phone tower records that were not authenticated?
>
> 3. Did the cumulative effect of counsel's errors deny … Appellant effective assistance of counsel?

Appellant's Brief at 3.

We begin by noting that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).  Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel

which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ... [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted). "If an appellant fails to prove by a preponderance of the evidence any of the [ineffective-assistance-of-counsel] prongs, the Court need not address the remaining prongs of the test." *Commonwealth v. Fitzgerald*, 979 A.2d 908, 911 (Pa. Super. 2009).

Appellant first claims that his trial counsel was ineffective for failing to object or request a cautionary instruction prior to the introduction of statements made by McMillan during a telephone conversation McMillan had with Appellant's mother. Appellant's Brief at 11. Appellant claims these failures resulted in a violation of his confrontation rights because McMillan did not testify at trial. *Id.*

We examine this issue subject to the following principles:

The Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses. Ordinarily, a witness whose testimony is introduced at a joint trial is not considered a

- 8 -

witness 'against' a defendant if the jury is instructed to consider the testimony only against a co-defendant. This principle is in accord with the well-established presumption that jurors will abide by their instructions. In **Bruton** [**v. United States**, 391 U.S. 123 (1968)]*,* however, the United States Supreme Court recognized that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." **[Id.]** at 135…. Accordingly, "[t]he **Bruton** Court held that, if a non-testifying co-defendant's confession directly and powerfully implicates the defendant in the crime, then an instruction to the jury to consider the evidence only against the co-defendant is insufficient, essentially as a matter of law, to protect the defendant's confrontation rights." [**Commonwealth v.**] **Brown***,* 925 A.2d [147,] 157 [(Pa. 2007)] (citing **Bruton***,* 391 U.S. at 135–36…).

The United States Supreme Court examined the *per se* **Bruton** rule in **Richardson**[ **v. Marsh**, 481 U.S. 200, 208 (1987)], and emphasized its narrow scope. Therein, the Court held that the "Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." **Richardson***,* 481 U.S. at 211…. Consistent with the High Court's pronouncement and our own line of cases, we have held that substituting the neutral phrase "the guy" or "the other guy" for the defendant's name is an appropriate redaction. **See Commonwealth v. Travers***,* … 768 A.2d 845, 851 ([Pa.] 2001).

**Commonwealth v. Cannon**, 22 A.3d 210, 217-18 (Pa. 2011) (some

citations omitted).

In [] **Travers**, … Thompson, Travers' co-defendant, admitted to the police his complicity in a murder and expressly made reference to Travers in his statement. The trial court ordered that the phrase "the other man" be substituted for any specific reference to Travers by name.

> This Court held that such a change, in conjunction with a cautionary instruction, was sufficient to protect Travers' Confrontation Clause rights. We reasoned as follows:

>> The rationale employed in *Gray* [*v. Maryland*, 523 U.S. (1998),] makes clear that the kind of redaction employed here does not implicate *Bruton* concerns in the same way as a statement that incriminates the defendant on its face, either by actually naming him or by an obvious method of deletion that no less certainly points the finger at him. The redacted statement here neither referred to [Travers] by name (the *Bruton* proscription) nor did it contain an obvious indication of a deletion or an alteration that was the functional equivalent of naming him (the *Gray* proscription). Indeed, use of a neutral pronoun is not an obvious alteration at all....

>> The "other man" reference employed here was certainly not the sort of reference which, even were the confession the very first item introduced at trial, obviously referred to the defendant…. Instead, … the redacted statement could become incriminating only through independent evidence introduced at trial which established the defendant's complicity and, even then, only if it is assumed that the jury ignored the court's charge.

> *Travers*, 768 A.2d at 851 (internal citations and quotations omitted).

*Commonwealth v. Miller*, 819 A.2d 504, 512 (Pa. 2002).

In the instant case, the challenged statements occurred during the testimony of Detective Timothy Carroll. At trial, Detective Carroll testified that he was part of the team that executed the search warrant at the Pine Street residence. N.T., 3/11/15, at 15. Appellant was present inside the residence when officers arrived and was immediately placed under arrest. *Id.* During the execution of the warrant but prior to McMillan's subsequent arrival, Appellant's mother had a telephone conversation with McMillan.

Detective Carroll instructed Appellant's mother to put the call on speaker, and Detective Carroll was then able to hear the conversation. *Id.* at 29. Detective Carroll related the contents of the conversation as follows at trial:

| [DETECTIVE CARROLL]: | She spoke to [Appellant's brother, Terrance,] first and she told Terrance to put [McMillan] on the phone, and then I heard the conversation between the two of them. |
|---|---|
| [DEPUTY DISTRICT ATTORNEY (DDA)]: | And what did -- the person on the phone that she said was [McMillan], what did he say? |
| [DETECTIVE CARROLL]: | He said that they had called a website and paid for pussy and that they had taken the woman's phone and money. |
| [DDA]: | Your Honor, at this time no further questions. |

*Id.* at 30.

On cross-examination, McMillan's counsel asked more questions about the phone call:

| [MCMILLAN'S COUNSEL]: | [Y]ou had said that while [Appellant's mother] had her phone on speaker phone, that you heard … McMillan say that they robbed her, took her phone and her money; is that correct? |
|---|---|
| [DETECTIVE CARROLL]: | That they took her phone and money, yes. |

\*\*\*

- 11 -

| [MCMILLAN'S COUNSEL]: | I believe at the preliminary hearing you were asked while the phone was on speaker phone if anyone mentioned a robbery or rape. And do you recall what your response was to that? |
|---|---|
| [DETECTIVE CARROLL]: | Not those words, no. |
| [MCMILLAN'S COUNSEL]: | So[,] what words were used? Because I believe you just testified over the phone they mentioned they robbed her and stole her phone. |
| [DETECTIVE CARROLL]: | That they took her phone and money. They didn't say, "We robbed and raped her" on the phone. |

*Id.* at 40-41. Although the trial court offered **Bruton**-style cautionary instructions prior to the admission of other statements, it did not provide one in relation to this testimony. Appellant's counsel did not request such an instruction or object to the testimony. McMillan did not testify at trial.

At the PCRA hearing, trial counsel testified that he did not have a specific recollection of this testimony or his reasoning for not objecting or requesting a cautionary instruction that the evidence should only be considered against McMillan.[2] N.T., 8/30/19, at 17. In dismissing this claim, the PCRA court found that "the statement does not explicitly reference or

---

[2] There was no defense file available for counsel to review prior to the PCRA hearing. At the time of Appellant's trial, counsel practiced law with a partner. Thereafter, counsel left that practice and Appellant's file remained with counsel's former partner. The partner died prior to the PCRA hearing and the file could not be located. *See* N.T., 8/30/19, at 9-10.

- 12 -

facially incriminate [Appellant, and t]here is therefore no confrontation clause violation." PCO at 11. Thus, the PCRA court concluded that counsel could not be ineffective for failing to lodge a frivolous objection. *Id.* at 11-12. As to counsel's failure to request a cautionary instruction, the PCRA court dismissed this claim because Appellant failed to prove prejudice in light of his pre-trial statement to police admitting to the robbery. *Id.* at 12.

On appeal, Appellant argues that "the only person the pronoun could refer to was … Appellant." Appellant's Reply Brief at 5. We disagree. McMillan's statement did not reference Appellant by name, and given that McMillan was with Appellant's brother at the time he was speaking to Appellant's mother, it is not obvious whether the "they" to which McMillan referred included Appellant's brother, Appellant, someone else, or some combination thereof. Rather, we conclude that the use of "they" falls under the category of neutral pronouns that do not run afoul of *Bruton* or *Gray*. However, such a conclusion does not necessarily foreclose the possibility that Appellant's right to confrontation was violated.

> When incrimination is merely inferential, the [Supreme C]ourt noted, "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." [*Richardson*, 481 U.S. at 208]. Where such linkage was required to implicate the defendant, the Court held, a proper limiting instruction was sufficient to satisfy *Bruton.* *See Gray,* 523 U.S. at 195… ("*Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially.").

*Travers*, 768 A.2d at 848; *see also Commonwealth v. Epps*, 240 A.3d 640, 651 (Pa. Super. 2020) ("Because [the co-defendant's] statement did

- 13 -

not directly reference Epps and the court issued an appropriate cautionary instruction, there was no confrontation violation."). Thus, our Supreme Court concluded that the neutral redaction employed in **Travers**,

> **combined with the trial court's accurate and repeated cautionary charge**, sufficed to protect [Travers'] Sixth Amendment right to confrontation. Since the statement was not powerfully incriminating on its face, the general rule to which **Bruton** and **Gray** are a limited exception, *i.e.,* the almost invariable assumption of the law that jurors follow their instructions, applies and controls.

**Travers**, 768 A.2d at 851 (citations, internal quotation marks, and footnote omitted; emphasis added).

Here, the statement included a neutral reference to another party instead of "powerfully incriminating [Appellant] on its face." **Id.** However, the trial court did not instruct the jury that it could only consider the statement against McMillan. Thus, under the foregoing jurisprudence, the PCRA court erred in concluding that Appellant's confrontation rights were not violated. As such, Appellant satisfied his burden of proving that his underlying claim has arguable merit.

Turning to the prejudice prong, the jury also heard Appellant's pre-trial statement to police that "[w]e robbed her." N.T., 3/11/15, at 72. Given Appellant's pre-trial statement and the additional overwhelming evidence of Appellant's guilt, even if the jury had not heard the contents of McMillan's phone conversation with Appellant's mother, the reference to an additional person had been removed, or the jury had received a proper cautionary

instruction, we cannot say that there is a reasonable likelihood that the outcome of the trial would have been different. Thus, the PCRA court's conclusion that Appellant failed to establish prejudice is supported by the record, and the PCRA court did not err in dismissing this claim. ***See Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009) ("[W]e may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm.") (citation omitted).

Appellant next claims that trial counsel was ineffective for not objecting to Detective Landamia's testimony about the victim's cell phone records based on the Commonwealth's failure to authenticate the records. Appellant's Brief at 13-15. In dismissing this claim, the PCRA court concluded that Appellant failed to prove all three prongs of the ineffective-assistance-of-counsel test. PCO at 6.

> At the PCRA hearing, trial counsel explained that they
>
> were not disputing that these people were at the place at the time that the crime was alleged, and that they made the calls. … I remember discussing it, thinking about it and talking about it with co-defendant's counsel and determining that it wasn't relevant to our defense. Whether they were authentic or not wasn't really the issue we were trying to present to the jury at that time.

N.T., 8/30/19, at 14; ***see also id.*** at 13, 18 (testifying that after discussing with Appellant and co-defendant's counsel, trial counsel did not believe it was relevant to Appellant's defense that the sexual acts were consensual).

- 15 -

After reviewing the evidence and the defense strategy, trial counsel decided not to object to the testimony because he did not believe that the cell phone evidence prejudiced Appellant. *Id.* at 16.

On appeal, Appellant argues that counsel should have objected to the evidence as inadmissible, regardless of whether it was prejudicial. Appellant's Brief at 14 (arguing "there is no excuse for not objecting to inadmissible evidence as one is never certain what importance a jury will attach to any particular piece of evidence"). At the PCRA hearing, trial counsel explained that "[t]hat's not necessarily my strategy, to make objections to everything that could possibly be objected to throughout the course of a trial, no. But it was certainly thought out in a way that, you know, made sense in terms of the way we presented our defense in the case." N.T., 8/30/19, at 13-14.

Upon review, the PCRA court's conclusion that Appellant failed to establish that trial counsel's actions lacked an objective reasonable basis is supported by the record. Thus, the PCRA court did not err in dismissing this claim.

Finally, Appellant argues that the cumulative effect of counsel's ineffectiveness, as it relates to the prior two claims, requires a new trial. Appellant's Brief at 15-17. Appellant failed to raise this claim in his PCRA

petition. Accordingly, it is waived.[3] **See** Pa.R.A.P. 302(a) ("Issues not raised before the lower court are waived and cannot be raised for the first time on appeal.").

Based on the foregoing, we affirm the order of the PCRA court.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/21

---

[3] Even if not waived, we agree with the PCRA court that, "since each of the individual claims lack merit, there is no 'cumulative effect' of ineffective assistance. '[N]o number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually.' **Commonwealth v. Reid**, … 99 A.3d 470, 520 (Pa. 2014) (citation omitted)." PCO at 12.